729 A.2d 21

NEW JERSEY STATE LEAGUE OF MUNICIPALITIES; AN ORGANIZATION OF MUNICIPALITIES; BOROUGH OF ELMER, A MUNICIPAL CORPORATION; TOWNSHIP OF PLAINSBORO, A MUNICIPAL CORPORATION; CITY OF PATERSON, A MUNICIPAL CORPORATION; GEORGE FERENSICK, AN INDIVIDUAL; ABSECON CITY; ALLOWAY TOWNSHIP; BERKELEY HEIGHTS TOWNSHIP; BERLIN BOROUGH; BERNARDS TOWNSHIP; BERNARDSVILLE BOROUGH; BOGOTA BOROUGH; BOONTON TOWN; BRANCHBURG TOWNSHIP; BUENA VISTA TOWNSHIP; BURLINGTON CITY; CALIFON BOROUGH; CAPE MAY POINT BOROUGH; CHATHAM BOROUGH; CHESTER TOWNSHIP; CLINTON TOWNSHIP; CLOSTER

SHIP; CLOSTER BOROUGH; COLLINGSWOOD BOROUGH; COLTS NECK TOWNSHIP; CRANBURY TOWNSHIP; DELAWARE TOWNSHIP; DUMONT BOROUGH; EAST BRUNSWICK TOWNSHIP; EASTAMPTON TOWNSHIP; ELSINBORO TOWNSHIP; EMERSON BOROUGH; ENGLEWOOD CLIFFS BOROUGH; ESSEX FELLS BOROUGH; EVESHAM TOWNSHIP; FAIR LAWN BOROUGH; FAIRFIELD TOWNSHIP; FARMINGDALE BOROUGH; FLORHAM PARK BOROUGH; FRANKLIN TOWNSHIP (HUNTERDON COUNTY); FREEHOLD TOWNSHIP; FRELINGHUYSEN TOWNSHIP; FRENCHTOWN BOROUGH; GIBBSBORO BOROUGH; GREEN BROOK TOWNSHIP; HACKENSACK CITY; HADDON TOWNSHIP; HADDONFIELD BOROUGH; HALEDON BOROUGH; HAMBURG BOROUGH; HAMILTON TOWNSHIP (ATLANTIC COUNTY); HAMILTON TOWNSHIP (MERCER COUNTY); HAMPTON TOWNSHIP; HARDING TOWNSHIP; HARDYSTON TOWNSHIP; HAZLET TOWNSHIP; HIGHLAND PARK BOROUGH; HILLSDALE BOROUGH; HOPATCONG BOROUGH; KEYPORT BOROUGH; LAFAYETTE TOWNSHIP; LAVALLETTE BOROUGH; LAWRENCE TOWNSHIP (CUMBERLAND COUNTY); LAWRENCE TOWNSHIP (MERCER COUNTY); LEBANON BOROUGH; LINCOLN PARK BOROUGH; LITTLE EGG HARBOR TOWNSHIP; LITTLE SILVER BOROUGH; LIVINGSTON TOWNSHIP; LODI BOROUGH; LONG BRANCH CITY; LOWER ALLOWAYS CREEK TOWNSHIP; LUMBERTON TOWNSHIP; MAHWAH TOWNSHIP; MANALAPAN TOWNSHIP; MANASQUAN BOROUGH; MANCHESTER TOWNSHIP; MANNINGTON TOWNSHIP; MIDDLESEX BOROUGH; MILLBURN TOWNSHIP; MILLSTONE TOWNSHIP; MILLVILLE CITY; MONTVALE BOROUGH; MONTVILLE TOWNSHIP; MOORESTOWN TOWNSHIP; MOUNT OLIVE TOWNSHIP; NEPTUNE TOWNSHIP; NEW PROVIDENCE BOROUGH; NEWTON TOWN; NORTH BRUNSWICK TOWNSHIP; NORTH CALDWELL BOROUGH; NORTH HALEDON BOROUGH; NORTH HANOVER TOWNSHIP; OAKLAND BOROUGH (BERGEN COUNTY); OGDENSBURG BOROUGH; OLD BRIDGE TOWNSHIP; OLD TAPPAN BOROUGH; OLDMANS TOWNSHIP; ORADELL BOROUGH; PARK RIDGE BOROUGH; PARSIPPANY-TROY HILLS TOWNSHIP; PAULSBORO BOROUGH; PENNS GROVE BOROUGH; PENNSVILLE TOWNSHIP; PILESGROVE TOWNSHIP; PINE HILL TOWNSHIP; PITTSGROVE TOWNSHIP; PLUMSTED TOWNSHIP; QUINTON TOWNSHIP; RAMSEY BOROUGH; RANDOLPH TOWNSHIP; READINGTON TOWNSHIP; RED BANK BOROUGH; RIDGEFIELD PARK VILLAGE; RIDGEWOOD VILLAGE; RIV-

ER VALE TOWNSHIP; RIVERDALE BOROUGH; ROOSEVELT BOROUGH; ROSELAND BOROUGH; SADDLE RIVER BOROUGH; SALEM CITY; SAYREVILLE BOROUGH; SCOTCH PLAINS TOWNSHIP; SEA BRIGHT BOROUGH; SHREWSBURY BOROUGH; SOUTH BRUNSWICK TOWNSHIP; SOUTH PLAINFIELD BOROUGH; SOUTH RIVER BOROUGH; STAFFORD TOWNSHIP; STONE HARBOR BOROUGH; SUMMIT CITY; TEANECK TOWNSHIP; TENAFLY BOROUGH; UPPER FREEHOLD TOWNSHIP; UPPER PITTSGROVE TOWNSHIP; UPPER SADDLE RIVER BOROUGH; UPPER TOWNSHIP; VOORHEES TOWNSHIP; WALL TOWNSHIP; WASHINGTON TOWNSHIP (BERGEN COUNTY); WASHINGTON TOWNSHIP (GLOUCESTER COUNTY); WASHINGTON TOWNSHIP (MERCER COUNTY); WATCHUNG BOROUGH; WAYNE TOWNSHIP; WEST AMWELL TOWNSHIP; WEST CALDWELL TOWNSHIP; WEST LONG BRANCH BOROUGH; WEST WINDSOR TOWNSHIP; WESTAMPTON TOWNSHIP; WESTFIELD TOWN; WESTWOOD BOROUGH; WILDWOOD CITY; WILDWOOD CREST BOROUGH; WOODCLIFF LAKE BOROUGH; WOOD-RIDGE BOROUGH; WOODSTOWN BOROUGH; WYCKOFF TOWNSHIP; ASSOCIATION OF ENVIRONMENTAL AUTHORITIES; MUNICIPAL CLERKS ASSOCIATION OF NEW JERSEY, INC.; NEW JERSEY PLANNING OFFICIALS, INC; NEW JERSEY INSTITUTE OF MUNICIPAL ATTORNEYS; NEW JERSEY MUNICIPAL MANAGEMENT ASSOCIATION AND NEW JERSEY SOCIETY OF MUNICIPAL ENGINEERS, INC., APPELLANTS-APPELLANTS, v. DEPARTMENT OF COMMUNITY AFFAIRS AND JANE M. KENNY, COMMISSIONER, RESPONDENTS-RESPONDENTS.

Argued January 20, 1999—Decided May 13, 1999.

214

*Stuart R. Koenig* argued the cause for appellants (*Stickel, Koenig & Sullivan,* attorneys).

*Keith A. Costill,* Deputy Attorney General, argued the cause for respondents (*Peter Verniero,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel).

*Thomas F. Carroll, III,* argued the cause for amicus curiae, New Jersey Builders Association (*Hill Wallack,* attorneys).

The opinion of the Court was delivered by

STEIN, J.

This appeal presents a challenge to the validity of regulations promulgated by the Department of Community Affairs (DCA) pursuant to the Residential Site Improvement Standards Act, *N.J.S.A.* 40:55D–40.1 to –40.7. Those regulations establish a uniform set of site improvement standards for residential development. The primary issue before us is whether the standards impermissibly limit the zoning power of New Jersey's municipalities. We also consider the ancillary issue of whether the DCA and the DCA Commissioner exceeded their delegated authority in adopting certain portions of the regulations.

## I

In 1976, the Legislature enacted the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –129. The MLUL was intended, in part, "[t]o encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare" and "[t]o ensure that the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities, the county and the State as a whole." *N.J.S.A.* 40:55D–2(a), –2(d).

The MLUL authorizes municipalities to adopt zoning ordinances "relating to the nature and extent of the uses of land and of buildings and structures thereon." *N.J.S.A.* 40:55D–62(a). Pursuant to the MLUL, such ordinances may

[e]stablish, for particular uses or classes of uses, ... standards for the provision of adequate physical improvements including, but not limited to, off-street parking and loading areas, marginal access roads and roadways, other circulation facilities and water, sewerage and drainage facilities....

[*N.J.S.A.* 40:55D–65(d).]

Under the MLUL, each municipality is permitted to adopt its own set of standards for physical improvements. As a result, developers that build projects in more than one municipality often encounter inconsistent requirements. See John M. Kerekes, *Housing Made Easy: New Jersey's Uniform Site Improvements Standards Act of 1993*, 21 Seton Hall Legis. J. 11, 12 (1997) (observing that curb height standards differ by as much as fifty percent between contiguous municipalities). The lack of uniformity among the various municipalities' site improvement standards has adversely affected construction costs, and therefore housing costs, throughout the state. *N.J.S.A.* 40:55D–40.2a, –40.2b.

Recognizing that "[t]he multiplicity of standards for subdivisions and site improvements ... increases the costs of housing without commensurate gains in the protection of the public health and safety," *N.J.S.A.* 40:55D–40.2(a), the Legislature sought to reduce housing costs by facilitating the approval process for new residential developments. *N.J.S.A.* 40:55D–40.2(e). To advance that

goal, in January 1993 the Legislature enacted the Site Improvement Standards Act (Act), *L.* 1993, *c.* 32, codified at *N.J.S.A.* 40:55D–40.1 to –40.7. In a statement accompanying the signing of the Act, Governor Florio noted that the legislation would "cut industry costs by promoting standardization of construction materials and design" without "limit[ing] municipal zoning powers." Office of the Governor, *News Release* at 1 (Jan. 29, 1993). The Act authorized the establishment of a uniform set of technical site improvement standards for streets, roads, parking facilities, sidewalks, drainage structures, and utilities. *N.J.S.A.* 40:55D–40.1. The uniform standards were to "supersede any such site improvement standards incorporated within the development ordinances of any municipality." *N.J.S.A.* 40:55D–40.5.

Although the Legislature intended to create uniform "technical requirements" for residential development, *N.J.S.A.* 40:55D–40.2(f), it recognized that the "policymaking aspects of development review are best separated from the making of technical determinations," *N.J.S.A.* 40:55D–40.2(g). Consistent with that recognition, the Legislature amended an earlier proposed draft of the Act to remove language that would have authorized the establishment of uniform "design" standards in addition to the site improvement standards. That amendment also added a provision to the final version of the Act stating that "nothing contained in [the Act] shall in any way limit the zoning power of any municipality." *N.J.S.A.* 40:55D–40.6.

The Act established an Advisory Board (Board) to prepare and submit to the Commissioner of the DCA (Commissioner) recommendations for statewide site improvement standards for residential development. *N.J.S.A.* 40:55D–40.3, –40.4. The Board was directed to adopt the recommendations contained in Article Six of the "Model Subdivision and Site Plan Ordinance" (Model Ordinance) prepared by The Center for Urban Policy Research at Rutgers University. *N.J.S.A.* 40:55D–40.4(a). However, the Board was authorized to deviate from the Model Ordinance if the modifications were supported by "standards promulgated under

similarly authoritative auspices of any academic or professional institution or organization." *Ibid.*

The Board conducted an extensive review of the Model Ordinance and sought comments from professional planners and engineers throughout the state. Subcommittees were formed to evaluate more thoroughly specific topics addressed by the Model Ordinance. During the Board's deliberations, the DCA requested advice from the Attorney General's office concerning the extent to which municipal zoning power limited the DCA's authority to establish uniform site improvement standards. Noting that the "primary purpose" of the Act is to facilitate residential development through the establishment of uniform standards, the Attorney General's office responded that the DCA's authority to promulgate such standards was not limited by municipal zoning power.

In January 1996, following approximately two and one-half years of deliberations, the Board submitted its recommended standards to the Commissioner. The standards established requirements for streets and parking (*N.J.A.C.* 5:21–4.1 to –4.20), water supply (*N.J.A.C.* 5:21–5.1 to –5.4), sanitary sewers (*N.J.A.C.* 5:21–6.1 to –6.2), and stormwater management (*N.J.A.C.* 5:21–7.1 to –7.6). Although the majority of the proposed standards were adopted directly from the Model Ordinance, the Board modified some of the standards contained in the Model Ordinance and added others not contained in the Model Ordinance.

The majority of the standards are technical in nature. *See, e.g., N.J.A.C.* 5:21–4.18(a)(1) (thickness of concrete sidewalks); *N.J.A.C.* 5:21–5.3(h) (pipe size of water mains); *N.J.A.C.* 5:21–6.2(c)(9) (composition of manholes); *N.J.A.C.* 5:21–7.5(f) (structural criteria for stormwater detention basins). Some, however, arguably have the potential to affect the character or design of a municipality. *See, e.g., N.J.A.C.* 5:21–4.2 (street width); *N.J.A.C.* 5:21–4.14 (number of parking spaces required per bedroom).

The regulations contain limited exceptions to the uniform standards. First, de minimis deviations from the standards may be

granted "if the literal enforcement of one or more provisions of the standards is impracticable or will exact undue hardship because of peculiar conditions pertaining to the development in question." *N.J.A.C.* 5:21–3.1(a). Examples of de minimis exceptions include authorization to reduce the minimum number of parking spaces and the minimum size of parking stalls. *N.J.A.C.* 5:21–3.1(f). A second exception permits a municipality or a developer to seek a waiver if adherence to a given standard would pose a "danger to public health and safety." *N.J.A.C.* 5:21–3.2(b). Third, the regulations permit a municipality to establish "special area standards" that differ from the uniform standards. *N.J.A.C.* 5:21–3.5(a). Special area standards are intended to apply to sections of a municipality that "exhibit a distinctive character or environmental feature that the municipality ... [has] expressed a desire to preserve and enhance," such as historic districts or rural preservation areas.[1] *N.J.A.C.* 5:21–3.5(b). Finally, a developer and a municipality may agree to exceed the uniform standards. *N.J.A.C.* 5:21–3.6.

Prior to the publication of the proposed standards in the New Jersey Register, the Commissioner added a regulation requiring sidewalks in certain residential developments located near schools or recreational facilities. *N.J.A.C.* 5:21–4.5(b). The Commissioner determined that the sidewalk provision was necessary after receiving comments from the Director of the New Jersey Division of Highway Traffic Safety and others that such a requirement would reduce pedestrian fatalities. The sidewalk provision was based on a standard promulgated in a treatise by the United States Department of Transportation Federal Highway Administration. In adding the sidewalk requirement, the Commissioner relied on her authority under *N.J.S.A.* 40:55D–40.4(b), which provides that the Commissioner

---

[1] *Amicus curiae* New Jersey Builders Association contends that the special area exception is contrary to the Act's central purpose of uniformity. Because the parties did not raise that issue directly, it is not before us and we decline to address it.

shall promulgate the recommendations of the board with regard to statewide site improvement standards *without making a change* in any recommended standard *unless, in the commissioner's judgment, a standard would ... result in a danger to the public health or safety.* The commissioner may veto any site improvement standard on the abovementioned grounds; however, any veto of the commissioner may be overridden by a two-thirds vote of the board.

[Emphasis supplied.]

Following two hearings and a period for public comment, the proposed standards, including the sidewalk requirement, were adopted and became effective on June 3, 1997.

Pursuant to *Rule* 2:2–3(a), the League of Municipalities, together with 157 individual municipalities and other parties (collectively "League"), appealed from the promulgation of the regulations. Because the municipal zoning power, as delineated by *N.J.S.A.* 40:55D–65(d), includes the right to adopt standards for off-street parking, roads, and water and sewer facilities, the League contended that the DCA exceeded its authority when it promulgated regulations governing those aspects of residential development. Relying on the language of *N.J.S.A.* 40:55D–40.6 that nothing in the regulations "shall in any way limit" the zoning powers of the municipalities, the League argued that where a standard contained in the regulations conflicts with a requirement in a municipal zoning ordinance, the ordinance supersedes the uniform standard.

The Appellate Division held that the regulations were facially valid. *League of Municipalities v. Department of Community Affairs,* 310 *N.J.Super.* 224, 228, 708 *A.2d* 708 (App.Div.1998). In so holding, the court found that *N.J.S.A.* 40:55D–40.6 was not violated because the Legislature "has modified but not limited municipal zoning power." *Id.* at 236, 708 *A.2d* 708. Additionally, the Appellate Division concluded that the Board's modifications of the Model Ordinance were within its incidental powers. No issue is raised before us concerning *N.J.A.C.* 5:21–1.5(b), the provision of the regulations that the Appellate Division invalidated. We granted the League's petition for certification. 156 *N.J.* 382, 718 *A.2d* 1211 (1998).

## II

### A

We begin by reviewing well-established principles regarding the rulemaking function of administrative agencies. Administrative regulations are accorded a presumption of validity. *In re Township of Warren,* 132 *N.J.* 1, 26, 622 *A.*2d 1257 (1993); *Medical Soc'y v. New Jersey Dep't of Law & Pub. Safety,* 120 *N.J.* 18, 25, 575 *A.*2d 1348 (1990). The party challenging their validity bears the burden of proving that the regulations are arbitrary, capricious or unreasonable. *In re Amendment of N.J.A.C. 8:31B–3.31,* 119 *N.J.* 531, 543–44, 575 *A.*2d 481 (1990); *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 561, 384 *A.*2d 795 (1978). That judicial deference to administrative agencies stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are "particularly well equipped to read and understand the massive documents and to evaluate the factual and technical issues that . . . rulemaking would invite." *Bergen Pines County Hosp. v. New Jersey Dep't of Human Servs.,* 96 *N.J.* 456, 474, 476 *A.*2d 784 (1984). Therefore, the scope of review of an administrative regulation is "highly circumscribed," *Lower Main St. Assocs. v. New Jersey Hous. & Mortgage Fin. Agency,* 114 *N.J.* 226, 236, 553 *A.*2d 798 (1989), and a reviewing court is not to substitute its judgment for that of the agency, *Dougherty v. Department of Human Servs.,* 91 *N.J.* 1, 6, 449 *A.*2d 1235 (1982).

That deference, however, is not without limit. A regulation "must be within the fair contemplation of the delegation of the enabling statute." *New Jersey Guild of Hearing Aid Dispensers, supra,* 75 *N.J.* at 561–62, 384 *A.*2d 795 (quoting *Southern Jersey Airways, Inc. v. National Bank of Secaucus,* 108 *N.J.Super.* 369, 383, 261 *A.*2d 399 (App.Div.1970)); *see also In re Township of Warren, supra,* 132 *N.J.* at 26, 622 *A.*2d 1257 ("Courts . . . act only in those rare circumstances when it is clear that the agency action is inconsistent with the legislative mandate.") (quoting *Williams v.*

*Department of Human Servs.,* 116 *N.J.* 102, 108, 561 *A.*2d 244 (1989)).

This Court has recognized that "the grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and ... courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." *New Jersey Guild of Hearing Aid Dispensers, supra,* 75 *N.J.* at 562, 384 *A.*2d 795; *see also Cammarata v. Essex County Park Comm'n,* 26 *N.J.* 404, 411, 140 *A.*2d 397 (1958) ("The grant of an express power is always attended by the incidental authority fairly and reasonably necessary or appropriate to make it effective."). "[T]he absence of an express statutory authorization in the enabling legislation will not preclude administrative agency action where, by reasonable implication, that action can be said to promote or advance the policies and findings that served as the driving force for the enactment of the legislation." *A.A. Mastrangelo, Inc. v. Commissioner, Dep't of Envtl. Protection,* 90 *N.J.* 666, 683–84, 449 *A.*2d 516 (1982).

### B

We have recognized that basic local zoning policy is best left to the individual municipalities. *Pascack Ass'n v. Mayor & Council of Washington Township,* 74 *N.J.* 470, 483, 379 *A.*2d 6 (1977); *Lake Shore Estates, Inc. v. Denville Township Planning Bd.,* 255 *N.J.Super.* 580, 589, 605 *A.*2d 1106 (App.Div.1991), *aff'd o.b.,* 127 *N.J.* 394, 605 *A.*2d 1073 (1992); *see also Ward v. Scott,* 16 *N.J.* 16, 23, 105 *A.*2d 851 (1954) ("Local officials who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications for [a zoning] variance."). "Those matters that bear a close relation to the subject matter of local zoning ordinances—the conditions and use of land and its improvements—are ... appropriate for local

treatment." *Dome Realty, Inc. v. City of Paterson,* 83 *N.J.* 212, 226, 416 *A.*2d 334 (1980) (citations omitted).

Nevertheless, zoning is an exercise of the state's police power. *Zilinsky v. Zoning Bd. of Adjustment of Verona,* 105 *N.J.* 363, 367, 521 *A.*2d 841 (1987). Municipalities possess no inherent authority to zone; they have only that power that the Legislature has delegated to them. *Riggs v. Township of Long Beach,* 109 *N.J.* 601, 610, 538 *A.*2d 808 (1988). That principle is enunciated in the New Jersey Constitution:

> The Legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land, and the exercise of such authority shall be deemed to be within the police power of the State. Such laws shall be subject to repeal or alteration by the Legislature.
>
> [*N.J. Const.* art. IV, § 6, ¶ 2.]

Thus, while our Constitution authorizes legislative delegation of the zoning power to municipalities, it reserves the legislative right to repeal or modify that delegation.

We turn now to the primary issue in this appeal: whether the DCA exceeded its authority when it promulgated the uniform site improvement standards. Our inquiry concerning the scope of the DCA's authority begins with the terms of the Act. "When construing a statute, courts initially consider the statute's plain meaning." *National Waste Recycling, Inc. v. Middlesex County Improvement Auth.,* 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997). If the plain language of a statute creates uncertainties or ambiguities, a reviewing court must examine the legislative intent underlying the statute and "construe the statute in a way that will best effectuate [that] intent." *Ibid.* (quoting *State v. Szemple,* 135 *N.J.* 406, 422, 640 *A.*2d 817 (1994)). The general legislative intent influences the interpretation of a statute's component parts. *Ibid.* To that end, courts must read statutes "sensibly rather than literally." *Roig v. Kelsey,* 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994)

(quoting *Schierstead v. City of Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959)).

## III

### A

■ Before beginning our analysis, we note that the League does not cite specific regulations that it contends are unlawful, but rather asserts that the DCA generally exceeded its statutory authority when it promulgated the regulations. When pressed at oral argument, the League conceded that its appeal was essentially a challenge to the facial validity of the regulations. We agree.

■ We hold that the regulations promulgated by the DCA are facially valid. We cannot accept the League's literal interpretation of the language of *N.J.S.A.* 40:55D–40.6 stating that "[n]othing contained in this Act shall in any way limit the zoning power of any municipality." To read that section, as does the League, to mean that the uniform standards do not supersede contrary requirements in municipal zoning ordinances would render the Act virtually meaningless. Such an interpretation ignores the express legislative intent and purposes of the Act: to reduce housing costs by establishing uniform statewide standards for residential site improvement. *N.J.S.A.* 40:55D–40.2.

Because the Act contains two apparently contradictory sections, the plain language of the Act does not clarify adequately the scope of the DCA's authority. *N.J.S.A.* 40:55D–40.5 provides that the uniform standards "supersede" municipal zoning ordinances. That provision implies that the DCA has the power to promulgate residential site improvement standards that override any municipal ordinance dealing with streets, roads, parking facilities, sidewalks, drainage structures, and utilities. See *N.J.S.A.* 40:55D–40.1 (defining "site improvement"). However, *N.J.S.A.* 40:55D–40.6 provides that the standards "shall in [no] way limit" municipal zoning power. That provision perhaps implies that municipalities retain their power to zone as delineated under the MLUL. See

*N.J.S.A.* 40:55D–65(d) (defining municipal zoning powers). Because that conflict creates an ambiguity about the scope of the DCA's authority, the plain language of the statute does not end our inquiry.

When we look beyond the plain language of the statute, *Szemple, supra,* 135 *N.J.* at 422, 640 *A.*2d 817, that the Legislature intended to authorize the DCA to promulgate the regulations becomes clear. The Act explicitly directs the implementation of the standards contained in the Model Ordinance, and defines "site improvement" in terms that apply to streets, roads, parking facilities, sidewalks, drainage structures, and utilities. In addition, the intent to establish uniform improvement standards is explicitly stated in the Act. Finally, the Act provides that, in the case of an inconsistency between the Model Ordinance and the MLUL, the Board was to conform its recommendations to the Model Ordinance. *N.J.S.A.* 40:55D–40.4(a).

The Act constitutes a major step by the Legislature toward fostering uniformity and predictability in residential development, and we have no reason to question the Legislature's finding that uniform standards will serve the public interest by reducing housing costs. At the same time, however, the Act departs to some extent from the traditional "home rule" aspect of zoning. We understand the League's fear that the uniform standards will "intrude upon policy making aspects of development [that] would affect the design and character of communities." As the Legislature recognized in the Act, policymaking aspects of development review should be separated from technical determinations. To the extent that a specific standard affects local zoning policy, there may be valid local concerns. However, because this is a facial challenge to the regulations, the impact of specific standards on the design or character of municipalities is not the subject of this appeal.

Although the League concedes that the majority of the regulations "are the types of technical details which the Act was meant to authorize," we acknowledge that the regulations create the

potential for tension with matters of local zoning policy. The concerns raised by the League are best addressed in the form of "as-applied" challenges to particular regulations. If the application of a given standard to a specific Development, see *N.J.S.A.* 40:55D–4, within a municipality leads to a conflict with a matter of local zoning policy, that individual municipality may challenge the validity of the standard in that context. Our holding today does not preclude such a challenge.

We anticipate, however, that the challenges will be few. The Act and the MLUL share the same purpose and legislative intent—"to establish reasonable physical improvement standards to protect the public health, safety, and welfare." *League of Municipalities, supra,* 310 *N.J.Super.* at 236, 708 *A.*2d 708. The DCA must be accorded a certain degree of flexibility to enact regulations that further that important goal. *See In re Township of Warren, supra,* 132 *N.J.* at 27, 622 *A.*2d 1257. In addition, we trust that the exceptions to the application of the uniform standards, although limited in scope, can diminish some of the potential conflicts that might arise and that, if necessary, the DCA can modify its regulations to make more permissive the standards for granting exceptions or variances.

B

The League's remaining contentions, that the DCA and the Commissioner exceeded their delegated authority in adopting certain regulations, are without merit. First, the League asserts that the DCA impermissibly deviated from the Model Ordinance when it promulgated certain regulations. As noted above, the Act authorizes the DCA to adopt standards different from those contained in the Model Ordinance provided that such standards are supported by "any academic or professional institution or organization." *N.J.S.A.* 40:55D–40.4(a). We agree with the Appellate Division that many of the regulations challenged by the League are supported by the required authoritative sources and are therefore valid. The numerous institutions and organizations

on which the Board relied when it reviewed and modified the Model Ordinance are set forth at *N.J.A.C.* 5:21–8.1.

 Concerning the challenged modifications that are not explicitly supported by authoritative sources, we note initially that many of the deviations are insignificant. *See, e.g., N.J.A.C.* 5:21–4.3(f), –4.17(a) (Model Ordinance curb width requirement of nine inches reduced in regulations to eight inches). Moreover, the deviations from the Model Ordinance are well within the incidental powers granted to the DCA under the Act. *New Jersey Guild of Hearing Aid Dispensers, supra,* 75 *N.J.* at 562, 384 *A.*2d 795. We therefore defer to the findings of the Board members, whose expertise in matters of building, engineering, and planning makes them far better-equipped than this Court to promulgate appropriate site improvement standards. See *N.J.S.A.* 40:55D–40.3 (prescribing composition of Board). To do otherwise would frustrate the ability of the DCA to effectuate the purposes of the Act.

 Similarly, we reject the League's contention that the Commissioner lacked the authority to add the sidewalk provision to the standards recommended by the Advisory Board. That claim was raised for the first time in the League's petition for certification, and therefore was not addressed by the Appellate Division.

The Act clearly authorizes the Commissioner to "veto any site improvement standard" if the Commissioner determines that the standard would "result in a danger to the public health or safety." *N.J.S.A.* 40:55D–40.4(b). That the sidewalk requirement is beneficial to public safety is uncontroverted. Rather, the League contends that although the Commissioner had the power to *veto* any standard, she was not authorized to *modify* or *supplement* the proposed standards. We acknowledge that the plain language of *N.J.S.A.* 40:55D–40.4(b) does not explicitly authorize the Commissioner to change or modify the Board's proposed standards. Nevertheless, we decline to invalidate the sidewalk provision. We note that *N.J.S.A.* 40:55D–40.4(b) requires the Commissioner to promulgate the standards proposed by the Board "without making

a change ... *unless* " danger to public safety would result. By implication, that language may be read as authorizing the Commissioner to change the proposed standards *if* she determines there is a concern for public safety. We therefore reject the League's narrow interpretation that the term "veto" means the power only to delete a standard proposed by the Board, and hold that the Commissioner had the statutory authority to add the sidewalk provision. *Cf. N.J. Const.* art. V, § 1, ¶ 14 (providing that governor's veto power includes power to "recommend that an amendment or amendments specified by him be made in the bill").

Because the League has failed to rebut the presumption of validity to which administrative regulations are entitled, *Dougherty, supra*, 91 *N.J.* at 6, 449 *A.*2d 1235, we uphold the Board's modifications of the Model Ordinance and the Commissioner's addition of the sidewalk requirement.

### IV

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.