FASCIALE, J.A.D.
*97 In exercising its executive-agency technical expertise, the New Jersey Department of Banking and Insurance (the Department), Small Employer Health Benefits Program Board (the SEH Board) engaged in rulemaking in accordance with the expedited procedure established by N.J.S.A. 17B:27A-51 (Section 51), rather than pursuant to the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31. The New Jersey Spine Society (the Society) appeals from the SEH Board's repeal of N.J.A.C. 11:21-7.13 (Section 7.13) as part of its re-adoption of N.J.A.C. 11:21-1.1 to - 23.6 (the Re-adoption). The SEH Board, not the Department, invoked its Section 51 expedited rulemaking powers because N.J.A.C. 11:21-1.1 to - 23.6 was due to expire. This case addresses whether Section 51 authorized the SEH Board to *335 repeal Section 7.13, whether the SEH Board complied with Section 51's procedural safeguards, and whether the SEH Board's final decision was arbitrary.
Section 7.13 pertained to out-of-network benefits under certain health insurance plans. The repeal did not eliminate the benefits but merely eliminated reliance on what the SEH Board argues are obsolete standards for determining the amount of an allowable charge for voluntary use of out-of-network services. In the aftermath of the repeal, certain carriers are now required to disclose their basis for permitting allowable charges for voluntary use of out-of-network benefits. The SEH Board maintains that such a requirement promotes competition in the small employer health market, and empowers employees of small employers to make informed decisions about whether to voluntarily seek services from an out-of-network provider.
The Society argues the SEH Board erred by relying on Section 51. Instead, the Society contends that the APA governs the repeal of Section 7.13, which the Society asserts the SEH Board violated. In urging us to reverse the final decision, the Society contends that the repeal amounts to an arbitrary decision because the SEH
*98 Board purportedly contravened its own mission statement and the intent of the enabling statute.
Section 51 empowers the SEH Board to expedite rulemaking as to certain defined "actions." The legal issue is whether the repeal of Section 7.13 constituted an "action" under Section 51. We hold that the repeal of Section 7.13, at a minimum, modified certain small employer health benefits and policy plans, two of the enumerated "actions" in Section 51. As a result, the SEH Board correctly relied on Section 51. The SEH Board complied with the procedural safeguards of Section 51, properly repealed Section 7.13, and adhered to its mission statement and enabling statute. We therefore affirm the final agency decision, and uphold the Re-adoption and the repeal.
I.
We begin by briefly addressing the SEH Board's fundamental statutory rulemaking powers. Doing so informs our conclusion that the SEH Board properly relied on and followed Section 51 to repeal Section 7.13. It also provides further support for our holding that the repeal amounted to an "action" under Section 51 because, at a minimum, it constituted a modification of health benefits and policy plans.
In 1992, the Legislature enacted N.J.S.A. 17B:27A-17 to -56, currently known as the Small Employer Health Benefits Act (Benefits Act), to improve New Jersey's small employer health insurance marketplace. The Benefits Act created the Small Employer Health Benefits Program (the Program) pursuant to N.J.S.A. 17B:27A-28. The Program "assure[s] the availability of the standardized health benefits plans to New Jersey small employers, their full-time employees and the dependents of those full-time employees, on a guaranteed issue basis." N.J.A.C. 11:21-2.1(a). The SEH Board administers the Program. N.J.S.A. 17B:27A-28.
Although the SEH Board falls under the umbrella of the Department, the Legislature granted the SEH Board specific *99 powers to accomplish its statutory obligation to administer the Program. One of these powers is expedited rulemaking. Here, we are reviewing not the Department's repeal, but rather, the SEH Board's repeal of Section 7.13.
Pursuant to Section 51, the Legislature authorized the SEH Board to adopt certain *336 actions in its administration of the Program. To highlight this point, in 1993, the Legislature repealed N.J.S.A. 17B:27A-46, which had stated "[n]otwithstanding any other provision of law to the contrary, all regulations concerning any health benefits plan subject to this act shall be promulgated pursuant to this act." The Legislature repealed N.J.S.A. 17B:27A-46 because it found it obsolete with the implementation of the more specific public notice requirements of Section 51. S. Health & Human Servs. Comm. Statement to S. 1686 2 (L. 1993, c. 162). In other words, Section 51 imposed significant notice obligations, which afforded appropriate due process associated with the SEH Board's statutory expedited rulemaking procedures.
Although the Legislature did not "prohibit the [SEH B]oard from adopting any action pursuant to the provisions of the [APA]," see N.J.S.A. 17B:27A-51(g), the Legislature empowered the SEH Board to adopt "actions" pursuant to the provisions of Section 51(a), which states:
a. For the purposes of this section, "action" includes, but is not limited to:
(1) the establishment and modification of health benefits plans;
(2) procedures and standards for the: (a) assessment of members and the apportionment thereof; (b) filing of policy forms; (c) making of rate filings; (d) evaluation of material submitted by carriers with respect to loss ratios; and (e) establishment of refunds to policy or contract holders; and
(3) the promulgation or modification of policy forms.
"Action" shall not include the hearing and resolution of contested cases, personnel matters and applications for withdrawal or exemptions.
[ N.J.S.A. 17B:27A-51(a) (emphasis added).]
If the SEH Board chooses to exercise its statutory right to engage in rulemaking under Section 51, and the contemplated action-here, the repeal of Section 7.13-constitutes an "action" pursuant to Section 51, then prior to the adoption of that action, the SEH Board must follow Section 51's procedural safeguards. We emphasize *100 that the Legislature empowered the SEH Board to act pursuant to Section 51, "notwithstanding the provisions of [the APA]." N.J.S.A. 17B:27A-51(a).
II.
Interpreting the rulemaking language of Section 51 is critical in this dispute. In arguing that the SEH Board erroneously relied on Section 51, the Society maintains that the Re-adoption and the repeal do not constitute an "action" as defined by Section 51. As a result, it maintains that the APA, not Section 51, governs the Re-adoption and the repeal. To resolve this contention, we must interpret and apply Section 51's definition of "action."
"In matters of statutory interpretation, our review is de novo." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294, 166 A.3d 1140 (2017). "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). A court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Ibid. (citations omitted). "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.' "
*337 Id. at 492-93, 874 A.2d 1039 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75, 861 A.2d 123 (2004) ).
By its own terms, Section 51 applies to "actions" adopted by the SEH Board. In Section 51, the Legislature clearly described what "action" does and does not mean. Because the text of Section 51 is unambiguous, we need not consider extrinsic evidence to discern its meaning.
As to what "action" does not mean, it is undisputed that the Re-adoption and the repeal of Section 7.13 do not pertain to "the hearing and resolution of contested cases, personnel matters and applications for withdrawal or exemptions."
*101 N.J.S.A. 17B:27A-51(a). Thus, the Re-adoption and the repeal do not fall under the category of what "action" is not. We focus, instead, on whether the Re-adoption and the repeal of Section 7.13 constitute what "action" is, as defined by Section 51. We do so by analyzing whether the repeal falls under one of the three enumerated examples of "action," or if not, whether the repeal constitutes an "action" not expressly defined in Section 51.
As to this last point, we are not constrained by the examples of "action" listed in Section 51. We acknowledge that the Legislature did not intend to limit its definition of what constitutes "action" to the definitions it identified in Section 51(a)(1), (2) and (3). That is so because in defining "action," the Legislature used the words "includes, but is not limited to." N.J.S.A. 17B:27A-51(a). The use of such a phrase demonstrates that the three examples-Section 51(a)(1), (2) and (3)-are non-exhaustive. See United States v. Philip Morris USA, Inc., 566 F.3d 1095, 1115 (D.C. Cir. 2009) (explaining that the term "includes" indicates a non-exhaustive list, but "adding 'but not limited to' helps to emphasize the non-exhaustive nature").
By providing examples of what "action" does not constitute, the Legislature provided further support for our conclusion that the definition of "action" is not limited to Section 51(a)(1), (2) and (3). We reach that conclusion based on the plain language of Section 51. Nevertheless, the Re-adoption and the repeal of Section 7.13 constitute "action" as expressly defined by Section 51(a)(1) and (3).
Under Section 51(a)(1), "action" includes "the establishment and modification of health benefits plans." Pursuant to N.J.S.A. 17B:27A-17, "health benefits plans" means "any hospital and medical expense insurance policy or certificate; health, hospital, or medical service corporation contract or certificate; or health maintenance organization subscriber contract or certificate delivered or issued for delivery in this State by any carrier to a small employer group pursuant to section 3 of [ N.J.S.A. 17B:27A-19 ]." The repeal of Section 7.13 modified health benefits plans because it changed *102 the manner in which certain health insurers must disclose allowed charges for voluntary use of out-of-network providers.
A closer look at the repealed regulation illustrates this point. The repealed Section 7.13 falls under subchapter 7, which is entitled "Program Compliance." "This subchapter sets forth the standards all carriers must meet in offering, issuing and renewing all health benefits plans to any small employer, the small employer's full-time employees, and the dependents of those full-time employees." N.J.A.C. 11:21-7.1. Section 7.13 stated:
(a) Except as stated in (b) below for prosthetic and orthotic appliances, in paying benefits for covered services under the terms of the small employer health benefits plans provided by health care providers not subject to capitated or negotiated fee arrangements, small *338 employer carriers shall pay covered charges for services, using either the allowed charges or actual charges. Allowed charge means a standard based on the Prevailing Healthcare Charges System profile for New Jersey or other state when services or supplies are provided in such state, incorporated herein by reference published and available from the Ingenix, Inc., 12125 Technology Drive, Eden Prairie, Minnesota 55344.
1. The maximum allowed charge shall be based on the 80th percentile of the profile.
2. Carriers shall use the profile effective as of July 1993, and shall update their databases within 60 days after receipt of periodic updates released by the Prevailing Healthcare Charges Systems.
(b) In paying benefits for prosthetic and orthotic appliances as required by P.L. 2007, c. 345, reimbursement shall be at the same rate as reimbursement for such appliances under the Federal Medicare reimbursement schedule, whether the benefits are provided on a network or out-of-network basis. However, if the carrier's contract rate with a network provider of orthotic and prosthetic appliances exceeds the Medicare reimbursement rate, the carrier's contract rate should be paid.
[ N.J.A.C. 11:21-7.13 (repealed 2016).]
Section 7.13 mandated small employer health benefits plans to determine the allowed charge for an out-of-network service using Ingenix. See Franco v. Conn. Gen. Life Ins. Co., 289 F.R.D. 121, 136 n.4 (D.N.J. 2013). The repeal of Section 7.13 modified health benefits plans, satisfying the definition of "action" in Section 51(a)(1), by mandating that specific carriers designate-instead of using the obsolete prevailing healthcare charges system-the basis on which they determined the allowed charge for voluntary out-of-network services.
*103 The Society incorrectly contends that because Section 7.13 fell under the subchapter that "sets forth the standards all carriers must meet in offering, issuing and renewing all health benefits plans," N.J.A.C. 11:21-7.1, the only enumerated "action" on which the SEH Board may rely is Section 51(a)(2), which pertains to
procedures and standards for the: (a) assessment of members and the apportionment thereof; (b) filing of policy forms; (c) making of rate filings; (d) evaluation of material submitted by carriers with respect to loss ratios; and (e) establishment of refunds to policy or contract holders.
[ N.J.S.A. 17B:27A-51(a)(2).]
The Society concludes that the SEH Board improperly relied on Section 51 to repeal Section 7.13 because in its view, the repeal did not modify the procedures and standards listed in Section 51(a)(2).
But the SEH Board's ability to engage in expedited rulemaking pursuant to Section 51 is not dependent on its ability to demonstrate its adoption of an act that constitutes "action" as described in each of the three examples, Section 51(a)(1), (2) and (3). Section 51 defines "action" in the disjunctive not conjunctive, which means that the SEH Board must show that its adoption constitutes, but is not limited to, one of the enumerated definitions of "action." The SEH Board relies on Section 51(a)(1), which we have analyzed, and Section 51(a)(3), which we will now address.
Pursuant to Section 51(a)(3), "action" includes "the promulgation or modification of policy forms." N.J.S.A. 17B:27A-51(a)(3). By repealing Section 7.13, the SEH Board mandated that carriers express their standards for permitting an *339 allowed charge for voluntary out-of-network services. The modification of the policy form is readily apparent by looking at the SEH Board's basis for proposing the repeal of Section 7.13.
The SEH Board proposes an amendment to the definition of allowed charge to replace the text referring to a standard approved by the [SEH] Board with direction to carriers to specify the methodology for determining allowed charges and requiring carriers to explain how a consumer can learn the allowed charge for services to be received. [The SEH Board proposes t]his amendment to the standard plans ... for the reasons already stated with respect to the proposed repeal of [Section 7.13]. In addition, the SEH Board proposes removing the statement that the section of the standard plans discussing coordination of benefits contains a distinct definition of allowed charge, because this statement unnecessarily *104 emphasizes the fact that the coordination of benefits provision contains specific definitions.
[48 N.J.R. 1564(a) (Aug. 15, 2016).]
The repeal changed the definition of "allowed charge" and effected the substance of the plans and policy forms by directing carriers to specify the methodology for determining allowed charges, rather than using the repealed standard previously approved by the SEH Board. Thus, this modification constitutes an "action" under Section 51(a)(3).
Finally, as to whether the SEH Board adopted an "action" as defined by Section 51, the SEH Board has the authority as it reasonably sees fit to administer the Program in a manner that furthers small employer health benefits plans. Even if the Re-adoption and the repeal of Section 7.13 did not qualify as an "action" pursuant to Section 51(a)(1) or (3), which is not the case, we conclude that the "but is not limited to" language of Section 51 authorized the SEH Board to otherwise treat the Re-adoption and the repeal as constituting an "action." That is so because, as the SEH Board argues, it amended its rules by repealing Section 7.13 to reflect what it concluded were outdated laws and market practices. In our view, this is the type of "action" the Legislature contemplated by using the "but is not limited to" language of Section 51.
III.
In empowering the SEH Board to engage in expedited rulemaking under Section 51, the Legislature detailed the procedure it must follow. The Legislature explained the procedural requirements for rulemaking in Section 51(b) through (f). We reject the Society's alternate argument that even if Section 51 applied to the Re-adoption and the repeal of Section 7.13, the SEH Board failed to follow these procedures.
At its April 20 and May 18, 2016 open session meetings, the SEH Board discussed the proposed Re-adoption. Notice of the meeting complied with the Open Public Meetings Act. At a May *105 25, 2016 open session meeting, the SEH Board voted to propose, through its Section 51 expedited rulemaking authority, the Re-adoption, including the repeal of Section 7.13. The scheduled expiration of N.J.A.C. 11:21-1.1 to - 23.6 on August 18, 2016, prompted the expedited rulemaking resulting in the Re-adoption.
On July 7, 2016, the SEH Board provided notice of the proposal to three newspapers, emailed the notice to various trade and professional organizations, and forwarded the notice to the Office of Administrative Law (OAL) for publication. In accordance with N.J.S.A. 52:14B-5.1(c)(2), because the notice of the proposal was filed with the OAL prior to the regulation's *340 expiration date, the expiration date was extended 180 days to February 14, 2017.
On August 15, 2016, the New Jersey Register published the proposal, 48 N.J.R. 1564(a) (Aug. 15, 2016), and the SEH Board conducted a public hearing on August 18, 2016. The SEH Board accepted comments on the notice of proposal through August 22, 2016, during which time the SEH Board heard from six commenters, including the Medical Society of New Jersey. The Society did not provide any comments, although it had the opportunity to do so.[1]
At the SEH Board's September 21, 2016 open session meeting, it adopted the Re-adoption. The SEH Board subsequently filed a notice of adoption with the OAL on October 12, 2016, which became effective on that date. On November 7, 2016, the New Jersey Register published the notice of adoption. 48 N.J.R. 2360(a) (Nov. 7, 2016). The operative date was January 1, 2017.
Section 51(b) requires the SEH Board to "publish notice of its intended action in three newspapers of general circulation in this State," and "provide the notice of intended action and a detailed description of the intended action by mail, or otherwise, to affected *106 trade and professional associations." N.J.S.A. 17B:27A-51(b). Furthermore, "[t]he notice of intended action shall include procedures for obtaining a detailed description of the intended action and the time, place and manner by which interested persons may present their views." Ibid. The SEH Board shall forward the notice and description to the OAL for publication in the New Jersey Register. Ibid. The SEH Board is required to hold a hearing "on the establishment and modification of health benefits plans," and the notice of a hearing shall be included in the notice of intended action. N.J.S.A. 17B:27A-51(c). Additionally, "[w]ritten comments shall be submitted to the [SEH B]oard within the time established by the [SEH B]oard in the notice of intended action, which time shall not be less than 20 calendar days from the date of notice." N.J.S.A. 17B:27A-51(d). This deadline starts when the SEH Board provides notice and description to the OAL for publication.
The SEH Board satisfied these requirements. On July 7, 2016, the SEH Board provided notice of the proposal to The Star-Ledger, The Times of Trenton, and The Courier-Post; emailed the notice to various trade and professional organizations; and forwarded the notice and description to the OAL for publication. The twenty-day deadline for written comments started on July 7, 2016.
The notice explained the proposal; informed the public that the SEH Board would hold a hearing on August 18, 2016; and required commenters to provide written comments by August 22, 2016. On August 15, 2016, the New Jersey Register published the proposal, and the SEH Board conducted the public hearing on August 18, 2016. The SEH Board then closed the comment period on August 22, 2016. The twenty-day deadline imposed by Section 51(d) began on July 7, 2016, the date of the "notice of intended action." Instead of allowing the minimum period for comments, twenty days, the SEH Board provided a forty-five day period, from July 7, 2016 to August 22, 2016.
The Society erroneously asserts that the date of notice should be August 15, 2016, *341 the date on which the New Jersey Register published the notice. This assertion, however, ignores the notice *107 obligations imposed under Section 51(b): "The Board shall forward the notice of intended action and the detailed description of the intended action concurrently to the [OAL] for publication in the New Jersey Register." N.J.S.A. 17B:27A-51(b) (emphasis added). Section 51(b) expressly requires that the SEH Board forward the notice and description to the OAL concurrently, which is exactly what the SEH Board did. Section 51(d) requires the twenty-day period to run "from the date of notice," not publication by the New Jersey Register.
IV.
We have already determined that the SEH Board correctly relied on and followed the procedural requirements for expedited rulemaking outlined in Section 51. The Society argues, however, that even if that is the case, we should still set aside the repeal of Section 7.13. It contends that the repeal of Section 7.13 purportedly violated the SEH Board's mission as well as the intent of the Benefits Act. The Society therefore asserts that the SEH Board rendered an arbitrary final agency decision.
We reject this contention because our scope of review of an administrative regulation is limited. Lewis ex rel. Lewis v. Catastrophic Illness in Children Relief Fund, 336 N.J. Super. 361, 369, 764 A.2d 1035 (App. Div. 2001). Administrative regulations have a presumption of validity and we afford them great deference. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89, 852 A.2d 1083 (2004). The challenging party "bears the burden of proving that the regulations are arbitrary, capricious or unreasonable." N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222, 729 A.2d 21 (1999). "[J]udicial deference to administrative agencies stems from the recognition that agencies have the specialized expertise necessary to enact regulations dealing with technical matters and are 'particularly well equipped to read and understand the massive documents and to evaluate the factual and technical issues that ... rulemaking would invite.' " Ibid. (second alteration in original) (quoting *108 Bergen Pines Cty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 474, 476 A.2d 784 (1984) ). The court's deference to the agency, however, is not without limit. "A regulation 'must be within the fair contemplation of the delegation of the enabling statute,' " ibid. (quoting N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-62, 384 A.2d 795 (1978) ), and an agency "may not under the guise of interpretation ... give the statute any greater effect than its language allows," Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964).
The Society argues the repeal violates public policy because the SEH Board and the carriers deprived insureds of their bargained-for benefits-specifically, a meaningful out-of-network benefit, limited risk of balance billing, and a meaningful maximum out-of-pocket limit. The SEH Board explained its mission statement in N.J.A.C. 11:21-1.6:
The mission of the [SEH Board] is to administer the ... Program in a manner aimed at increasing access to coverage, protecting consumers, educating key stakeholders in the marketplace and other interested parties, and promoting carrier participation in the market. This includes establishment and modification of standard plans for marketing to small employers and establishing and administering assessment mechanisms. It also includes the regulation of small employer health coverage carriers in conjunction with [the Department] and New Jersey Department of Health.
*342 Thus, its mission is essentially to protect consumers and expand health benefits plan options in the market. The Re-adoption and the repeal did just that by increasing access to health coverage, and promoting competitive carrier participation in the small employer market to ensure that consumers have a meaningful choice of health benefits plans. The repeal of Section 7.13 protected consumers because carriers must now give their basis for determining allowed charges for voluntary out-of-network services. This transparency enables consumers to exercise choice, market competition, and premium reduction.
The SEH Board's reasons for deleting the term "allowed charge" as it appeared in N.J.A.C. 11:21-1.2, and eliminating the SEH Board-designated reimbursement standard, by repealing Section 7.13, comports with its stated mission. The SEH Board *109 took this action in part because the number of insurance plans that featured out-of-network providers had substantially decreased; network providers provide most health care; the prevailing healthcare charges system operated by Ingenix no longer existed, making the database obsolete; some carriers did not offer plans with out-of-network benefits; and it expanded employer choice and reduced premiums. The repeal, as the SEH Board explained, "encourage[d] small employer carriers to make more plans with out-of-network benefits available," and "would be more equitable for the small employer market as a whole." 48 N.J.R. 1564(a) (Aug. 15, 2016). We have no credible basis to second guess the SEH Board's technical reasons, and conclude the SEH Board adhered to its mission statement, especially because the Re-adoption and the repeal are "within the fair contemplation of the delegation of" the Benefits Act. N.J. State League of Municipalities, 158 N.J. at 222, 729 A.2d 21 (quoting Long, 75 N.J. at 561-62, 384 A.2d 795 ).
The Society argues that the SEH Board ignored its purpose and the intent of the Benefits Act by creating an extremely narrow small employer health benefits market without a real out-of-network option. As we have stated, the Legislature created the Benefits Act to improve New Jersey's small employer health insurance marketplace. The Benefits Act created the Program, "to assure the availability of the standardized health benefits plans to New Jersey small employers, their full-time employees and the dependents of those full-time employees, on a guaranteed issue basis." N.J.A.C. 11:21-2.1(a). Thus, just as the Re-adoption and the repeal did not violate the SEH Board's mission statement or public policy, it did not contravene the Benefits Act.
Finally, the Society argues that the upshot of the repeal means that out-of-network benefits no longer provide adequate coverage to consumers; patients are subject to high balance bills; access to health care is limited; and maximum out-of-pocket protections no longer exist. We conclude these contentions are completely misplaced and are entirely without sufficient merit to warrant discussion *110 in a written opinion. R. 2:11-3(e)(1)(D), (E). We nevertheless add these brief comments.
As to its balance bills argument, the Society contends that patients will be subject to high balance bills if the repeal remains in effect. But its assertion pertains to emergency services, services performed at in-network hospitals, and services referred to or approved by insurance companies. These examples are substantially different than someone who voluntarily seeks services by an out-of-network provider. In other words, these arguments are inapplicable to the repeal of Section 7.13 and the Re-adoption. As the SEH Board pointed out, no definition of "allowed charge" in its rules will eliminate a *343 balance on a bill unless the allowed charge equals the amount on a bill invoiced by the provider.
Affirmed.

On December 29, 2016, a few days before the effective date of the Re-adoption and the repeal, the Society filed a motion with the SEH Board seeking a stay. The SEH Board denied that motion and issued an extensive written decision dated January 18, 2017. We too denied a stay.