922 A.2d 852

IN THE MATTER OF THE ADOPTION OF N.J.A.C. 19:3, 19:4, 19:5 AND 19:6 BY THE NEW JERSEY MEADOWLANDS COMMISSION.

NEW JERSEY BUILDERS ASSOCIATION, PLAINTIFF–APPELLANT, v. NEW JERSEY MEADOWLANDS COMMISSION, NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, BOROUGH OF EAST RUTHERFORD, AND THE PLANNING BOARD OF THE BOROUGH OF EAST RUTHERFORD, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 24, 2007—Decided May 21, 2007.

See also 390 N.J. Super. 1, 914 A.2d 348.

Before Judges COBURN, R.B. COLEMAN and GILROY.

*Kevin D. Walsh* argued the cause for appellant *Fair Share Housing Center* in A–4174–03T3 (*Peter J. O'Connor* and *Mr. Walsh,* on the brief).

*Carl S. Bisgaier* argued the cause for appellant *New Jersey Builders Association in A–3107–04T1* (*Flaster/Greenberg,* attorneys; *Richard J. Hoff, Mr. Bisgaier* and *Robert M. Washburn,* on the brief).

*Barbara L. Conklin,* Deputy Attorney General, argued the cause for respondent *New Jersey Meadowlands Commission in A–4174–03T3* and *A–3107–04T1* (*Stuart Rabner,* Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel; *Ms. Conklin,* on the brief).

*Timothy J. O'Neill* argued the cause for respondent *New Jersey Sports* and *Exposition Authority in A–3107–04T1* (*Windels Marx Lane & Mittendorf,* attorneys; *Mr. O'Neill,* of counsel; *Charles M. Fisher, Sandy L. Galacio, Jr., Ellen M. Christoffersen,* and *Mr. O'Neill,* on the brief).

*Beverly M. Wurth* argued the cause for respondents *Borough of East Rutherford* and *Planning Board of East Rutherford in A–3107–04T1* (*Calo Agostino,* attorneys; *Ms. Wurth,* on the brief).

*Ronald D. Cucchiaro* argued the cause for *amicus curiae Town of Secaucus in A–3107–04T1* (*Weiner Lesniak,* attorneys; *George T. Hanley,* of counsel; *Mr. Hanley* and *Mr. Cucchiaro,* on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

These appeals, which we have consolidated for purposes of this opinion, concern the State's constitutional obligation to provide affordable housing pursuant to *South Burlington County NAACP v. Township of Mount Laurel*, 67 *N.J.* 151, 336 *A.*2d 713 (*"Mount Laurel I"*), cert. denied and appeal dismissed, 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.*2d 28 (1975), and *South Burlington County NAACP v. Township of Mount Laurel* (*"Mount Laurel II"*), 92 *N.J.* 158, 456 *A.*2d 390 (1983). The primary defendants are two State agencies: the New Jersey Meadowlands Commission (the "Commission" or "NJMC") and the New Jersey Sports and Exposition Authority ("the Sports Authority").

In A–4174–03T3, the Fair Share Housing Center ("FSHC") asks that we invalidate the master plan and zoning regulations adopted by the Commission and transfer the case to the Law Division for remedial proceedings to be conducted with the assistance of a Special Master. FSHC argues that we should direct the Law Division to determine the realistic development potential of the Commission's territory, calculate the Commission's fair share of affordable housing, and ensure that the Commission provides realistic opportunities for development of the requisite affordable housing. FSHC also argues that in the meantime we should restrain all development in the Commission's territory, excepting residential projects that have twenty percent set-asides for affordable housing, and enjoin the Commission from "further fiscal zoning and discriminatory conduct."

FSHC's appeal comes to us directly from the Commission. Its primary focus is *N.J.A.C.* 19:4–3.8, repealed by 39 *N.J.R.* 548(a) (Feb. 5, 2007), which reads as follows:

The NJMC encourages the development of residential uses in accordance with New Jersey Council on Affordable Housing (COAH) guidelines. The municipality may satisfy its COAH responsibility with any residential development in the District. The NJMC will accept petitions for rezonings from municipalities seeking to rezone land in the District to meet their COAH obligations and processed in accordance with *N.J.A.C.* 19:3. Applications for variances to allow density increases to meet COAH obligations shall also be considered and processed in accordance with *N.J.A.C.* 19:4–4.14.

This rule, which currently is the Commission's only zoning provision for affordable housing, has become in effect only an interim regulation.

In A–3107–04T1, the New Jersey Builders Association ("NJBA") asks, among other things, for a judgment declaring that the Commission and the Sports Authority, "through their respective land use regulations, have a constitutional obligation under the Mount Laurel Doctrine to provide realistic housing opportunities to New Jersey's low income and moderate income households." To that end, NJBA argues that we should declare the present regulations of both State agencies unconstitutional; require that they develop remedial plans; and in the meantime, to preserve scarce resources, restrain all development by either agency.

NJBA's lawsuit was filed in the Law Division as an action in lieu of prerogative writs. Included in the lawsuit were claims against two local entities, the Borough of East Rutherford and its Planning Board. Since NJBA's claims against the Sports Authority and the Commission were based on State agency inaction, the trial court properly transferred those claims to us. *R.* 2:2–3(a)(2); *N.J. Civil Serv. Ass'n v. State*, 88 *N.J.* 605, 612, 443 *A.*2d 1070 (1982). The East Rutherford defendants were included in the transfer. They now argue that the case against them should have been dismissed by the Law Division because they have no authority to regulate land use in those areas of the meadowlands that are under the jurisdiction of these State agencies.

Although the Commission and the Sports Authority were created over a decade before *Mount Laurel II* was decided, this appears to be the first occasion on which a party has argued in the appellate courts that the principles and remedies expressed in the *Mount Laurel* cases apply directly to them.

While acknowledging a duty to assist its constituent municipalities with what it considers to be their *Mount Laurel* responsibilities, the Commission argued in its initial briefs that it has no direct obligation to zone or plan for affordable housing. But

subsequently the Commission acted as if it were in fact obliged to zone and plan for affordable housing. The Sports Authority, on the other hand, contends that it has no *Mount Laurel* duty. Both agencies seek dismissal of the appeals, relying in part on their authorizing legislation and on the New Jersey Fair Housing Act, *N.J.S.A.* 52:27D–301 to –329 ("FHA").

Two events provided the impetus for these cases: the adoption by the Council on Affordable Housing ("COAH") of its third round rules, pursuant to its authority under the FHA, and the Sports Authority's approval of a major construction project called Xanadu. The third round rules required that municipalities provide one affordable housing unit for every twenty-five newly created jobs in a non-residential development. Since Xanadu will generate about 20,000 construction jobs and about 20,000 permanent jobs, it implicates a need for affordable housing under COAH'S third round rules as originally adopted.

After these cases arrived on our docket, another panel held that COAH's third round growth share approach was inconsistent with the *Mount Laurel* doctrine. *In re Adoption of N.J.A.C. 5:94 and 5:95*, 390 *N.J.Super.* 1, 914 *A.2d* 348 (App.Div.2007). For that and other reasons, the panel ordered COAH to substantially revise its third round rules, while staying applications to COAH for substantive certification and builders' remedy lawsuits against municipalities whose applications for substantive certification would be affected by the decision. *Id.* at 41–46, 61–65, 67–71, 73–80, 86–88, 914 *A.2d* 348. Subsequently, that panel issued an order staying invalidation of "any municipal ordinance in effect at the time of issuance of the opinion," while adding that "[t]he validity of any ordinance should be tested on a case-by-case basis after COAH promulgates new rules in accordance with this court's opinion."

As a result of the court-ordered reworking of the third round rules, we are satisfied that both actions against the Commission should be transferred to it for further rule-making proceedings to be completed promptly after COAH acts. Although we agree with the Commission's claim that it has no direct *Mount Laurel*

responsibilities under the FHA, we are satisfied that it is constitutionally obliged to do more than merely assist municipalities in the manner indicated by *N.J.A.C.* 19:4–3.8, quoted above. On the other hand, we agree with the Sports Authority that it is not required to plan for affordable housing. Therefore, the action against the Sports Authority is dismissed. We reject the argument of the East Rutherford defendants on both procedural and substantive grounds, and remand the case against them to the Law Division.

The Commission was created in 1968 as part of the Hackensack Meadowlands Reclamation and Development Act. *N.J.S.A.* 13:17–1 to –86. It is responsible for the zoning and development of a district consisting of approximately 21,000 contiguous acres located in fourteen municipalities. Although one municipality is located entirely within the Meadowlands district, the other thirteen municipalities have about 25,000 acres located outside the district. The Commission has no regulatory control over land outside its district. But within its district, it is responsible for "orderly and comprehensive development" that takes the protection of the environment into account, but meets, among other needs, the urgent need for "residential" development. *N.J.S.A.* 13:17–1.

The Commission, which adopted its first master plan in 1972, proposed a new master plan in February 2003. In January 2004, the Commission adopted the zoning regulations that are now at issue: *N.J.A.C.* 19:3, 19:4, 19:5, and 19:6, and in particular *N.J.A.C.* 19:4–3.8. 36 *N.J.R.* 1033–1119 (Feb. 17, 2004).

However, after COAH adopted its third round rules, which went into effect on December 20, 2004, the Commission reacted by proposing new comprehensive rules governing affordable housing in its district. 38 *N.J.R.* 3762–3771 (Sept. 18, 2006). Those rules, which among other things, repealed *N.J.A.C.* 19:4–3.8, were adopted on January 11, 2007, and became effective on February 5, 2007. 39 *N.J.R.* 548 (Feb. 5, 2007). They reflect a substantial change of direction by the Commission, including "a requirement that all residential development shall provide its fair share of

affordable housing on-site pursuant to municipal growth share calculations." 38 *N.J.R.* at 3762.

We will not describe or evaluate the constitutionality of these new and very complex zoning rules for two reasons: the issues have not been briefed, and the Commission has stayed implementation of the rules pending further review and possible modification after COAH amends its third round rules.

The Commission stayed the new zoning regulations on affordable housing in a resolution adopted on March 12, 2007, which reads, in pertinent part, as follows:

NJMC hereby authorizes an interim affordable housing policy as follows:

1. The NJMC staff shall halt implementation of the NJMC's new affordable housing regulations until such repeal or amendment of the subject regulations shall occur; and

2. The NJMC staff shall direct applicants to contact the respective municipality in which proposed development is located regarding affordable housing requirements while this matter is being resolved in the courts; and

3. The NJMC staff shall utilize the prior affordable housing regulation at *N.J.A.C.* 19:4–3.8 as a guideline, which states:

> The NJMC encourages the development of residential uses in accordance with New Jersey State Council on Affordable Housing (COAH) guidelines. The municipality may satisfy its COAH responsibility with any residential development in the District. The NJMC will accept petitions for rezonings from municipalities seeking to rezone land in the District to meet their COAH obligations and processed in accordance with N.J.A.C. 19:3. Applications for variances to allow density increases to meet COAH obligations shall also be considered and processed in accordance with N.J.A.C. 19:4–4.14.

When the validity of an administrative regulation is questioned, the challenger "bears the burden of proving that the regulation is arbitrary, capricious or unreasonable." *N.J. State League of Municipalities v. Dep't of County Affairs,* 158 *N.J.* 211, 222, 729 *A.2d* 21 (1999). Of course, ordinarily we would not sustain a regulation, such as the one in question, that frustrates legislative policy and violates the Constitution. *See ibid.* But we are satisfied that the Commission's interim response to the court-ordered reworking of COAH's third round rules is reasonable because until the third round rules are resolved, the obligations of the Commission's constituent municipalities are unknown. In

other words, although we are convinced that the Commission has a constitutional responsibility to plan and zone for affordable housing to a far greater extent than is allowed by the interim rule, we are also satisfied that its planning and zoning should be based on the obligations of its constituent municipalities under the *Mount Laurel* doctrine and the FHA as administered by COAH. Although FSHC's claims are of constitutional dimension, in essence it is demanding that the Commission implement COAH's third round rules. Since deference is particularly appropriate when an agency is construing and implementing a new statute, *In re Adoption of N.J.A.C. 7:26B*, 128 *N.J.* 442, 452, 608 *A.2d* 288 (1992), it is certainly called for when an agency is asked to coordinate its actions with rules that have been rejected by a court and are in the process of being redone, as is the situation with COAH's third round rules.

We turn next to the proposition that we have asserted but not discussed: the Commission's constitutional responsibility to plan and zone for affordable housing.

In *Mount Laurel II, supra*, 92 *N.J.* at 209, 456 *A.2d* 390, the Court held that the avoidance of exclusionary zoning is a responsibility of the State:

> [T]he State controls the use of land, *all* of the land. In exercising that control it cannot favor rich over poor. It cannot legislatively set aside dilapidated housing in urban ghettos for the poor and decent housing elsewhere for everyone else. The government that controls this land represents everyone. While the State may not have the ability to eliminate poverty, it cannot use that condition as the basis for imposing further disadvantages. And the same applies to the municipality, to which this control over land has been constitutionally delegated.

Thus, although the *Mount Laurel* cases addressed municipal obligations under the Constitution, the principles enunciated were firmly based on a duty owed to the people by the State. We perceive no sound basis for concluding that when, as here, the State entrusts one of its agencies with complete control over the planning and zoning of a vast amount of land, approximately 21,000 acres, the agency is free to exercise its authority without taking affirmative steps to ensure adequate affordable housing.

In its initial brief, the Commission argued that *N.J.A.C.* 19:4–3.8 reflected the full extent of its power to encourage affordable housing under its enabling act and the FHA. But that claim is of course negated by the far more extensive and proactive regulations the Commission adopted in response to COAH's third round rules.

The Commission's position appears to come down to this proposition: although it has a legislative mandate to adopt regulations that provide for "orderly [and] comprehensive development," including "residential" development, *N.J.S.A.* 13:17–1, and by implication affordable housing, the judiciary is powerless to review those regulations to the extent that they bear on planning and zoning for affordable housing. Although state agency actions come before a court with a presumption of validity and are generally entitled to substantial deference, they are always subject to review for arbitrariness, capriciousness, or unreasonableness. *In re Adoption of N.J.A.C. 7:26E–1.13*, 377 *N.J.Super.* 78, 98, 871 *A.2d* 711 (App.Div.2005), *aff'd o.b.*, 186 *N.J.* 81, 891 *A.2d* 1203 (2006).

The Commission is operating now under an interim rule, pending adoption of new regulations after COAH completes its court-ordered reworking of the third round rules. Therefore, further discussion of the nature and extent of the judicial review appropriate in the context of these extraordinarily complex circumstances, which result from the interplay among the FHA, COAH, the *Mount Laurel* cases, and the Commission, would be premature. A decision on such matters should be made in the context of such litigation as may ensue after the Commission has taken the steps it believes will satisfy its *Mount Laurel* obligations.[1]

---

[1] In developing its new regulations, the Commission also should take into account, as FSHC has noted, the need to eschew fiscal zoning and discrimination against families with children, *Mount Laurel I, supra*, 67 *N.J.* at 182–83, 185–86, 336 *A.2d* 713.

Both FSHC and the NJBA contend that in the meantime we should order a scarce resources restraint in accordance with the principles set out in *Hills Development Co. v. Township of Bernards,* 103 *N.J.* 1, 61–63, 510 *A.*2d 621 (1986). Although NJBA refers in its brief to a certification submitted by a licensed professional planner, neither party includes any factual presentation on the subject in their Statement of Facts. Given the way this issue has been presented to us, and the complexity of the planning and zoning problems faced by the Commission, we believe the appropriate course is to direct the Commission to consider whether, and if so, to what extent, further development in the district should be avoided pending adoption of the new zoning rules.

■ We turn next to the claim brought by NJBA against the Sports Authority. On a site of approximately 700 acres located in the Meadowlands District and entirely within East Rutherford, the Sports Authority was charged with the responsibility for developing

> one or more stadiums, coliseums, arenas, pavilions, stands, field houses, playing fields, recreation centers, courts, gymnasiums, clubhouses, a racetrack for the holding of horse race meetings, and other ... structures ... complementary to a complex suitable for the holding of athletic contests or other sporting events, or trade shows, exhibitions, spectacles, public meetings, entertainment events or other expositions, including, but not limited to ... parking areas, parks, recreation areas, lodging facilities, vending facilities, restaurants ... and all other structures ... complementary to the purposes of that project or any facility thereof.
> [*N.J.S.A.* 5:10–6(a)(1).]

The Legislature also gave the Sports Authority power to determine the location, type, and character of its projects "notwithstanding any land use plan, zoning regulation, building code or similar regulation ... adopted by the State ... or any other political subdivision of the State...." *N.J.S.A.* 5:10–5(x).

Pursuant to its legislative grant, the Sports Authority developed Giants Stadium, the Continental Airlines Arena, and the Meadowlands Racetrack. And in 2002, it began planning for the project ultimately called Xanadu, which its brief describes as a major redevelopment of the "Sports Complex" into "a year-round venue

where many diverse sports, entertainment and recreation tenants would be assembled in a single, dynamic setting," which would include "office and hotel uses." After numerous proceedings that need not be detailed here, construction of Xanadu began in March 2005. As previously noted, this project will generate about 20,000 construction jobs and about the same number of permanent jobs, thereby implicating a need for affordable housing under COAH's third round rules as originally adopted.

In *Town of Bloomfield v. N.J. Highway Authority,* 18 *N.J.* 237, 244, 113 *A.*2d 658 (1955), the Court wrote that "[t]here is no doubt whatever as to the power of the Legislature to immunize *its* public Authorities from the provisions of local zoning and building restrictions." And in *Mount Laurel II, supra,* 92 *N.J.* at 238, 456 *A.*2d 390, the Court observed that "[t]he Constitution of the State of New Jersey does not require bad planning." In other words, we can "satisfy our constitutional obligation to provide lower income housing and, at the same time, plan the future of the state intelligently." *Ibid.* In this especially complex area of the law, the Court cautioned against dogmatism, *id.* at 243, 456 *A.*2d 390, while also noting that "our parks, farms, and conservation areas are not a land bank for housing speculators." *Id.* at 211, 456 *A.*2d 390. Nor should we forget that the Court also observed that "[t]he *Mount Laurel* obligation should, as a matter of sound judicial discretion reflecting public policy, be consistent with the state's plan for its future development." *Id.* at 226, 456 *A.*2d 390.

Here, the Legislature has a plan for the Sports Complex and that plan, set out in *N.J.S.A.* 5:10–6(a)(1), which is quoted above, does not appear to include onsite affordable housing. Given the proposition that we generally accord substantial deference to an agency's interpretation of a statute that it is charged to enforce, *GE Solid State, Inc. v. Dir., Div. of Taxation,* 132 *N.J.* 298, 306, 625 *A.*2d 468 (1993); the relatively small amount of land involved, about 700 acres in comparison to the 21,000 acres zoned by the NJMC; the *Mount Laurel* principles noted above; and the Sports Authority's determination that it should limit its planning and

development to the purposes listed in *N.J.S.A.* 5:10–6(a)(1), we are satisfied that dismissal of this claim is appropriate.

The East Rutherford defendants contend that NJBA's appeal should be dismissed for failure to join the State as an indispensable party. We see no merit in that contention since State agencies are defendants, and because we are entitled to adjudge the cause as between the parties who have been joined. *Ross v. Ross,* 308 *N.J.Super.* 132, 144, 705 *A.*2d 784 (App.Div. 1998). They also contend that they are entitled to dismissal of the claims against them because they have no control over zoning in the Meadowlands district.

The Law Division judge transferred this case to us at a very early stage of the proceedings without resolving this issue. Without having filed an appeal, the East Rutherford defendants offer their novel proposition in a brief that lacks supporting authority. In light of those circumstances and since the basic mechanism for enforcement of *Mount Laurel* responsibilities as to municipalities that have not submitted to COAH, such as East Rutherford, is a builder's action in the Law Division, we see no reason why this action should not be remanded and processed there in the ordinary course.

The appeal in A–3107–04T1 is dismissed as to the Sports Authority and remanded to the Law Division as to the East Rutherford defendants; both appeals against the NJMC are remanded to it for further proceedings consistent with this opinion.