743 A.2d 859

NEW JERSEY EDUCATION ASSOCIATION, APPELLANT/PETITIONER, v. BOARD OF TRUSTEES, PUBLIC EMPLOYEES RETIREMENT SYSTEM AND DIVISION OF PENSIONS AND BENEFITS, RESPONDENTS/RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 3, 1999—Decided January 19, 2000.

406

Before Judges MUIR, Jr., WALLACE and LESEMANN.

*Richard A. Friedman*, argued the cause for appellant (*Zazzali, Zazzali, Fagella & Nowak*, attorneys; *Mr. Friedman*, on the brief).

*David Dembe*, argued the cause for respondents (*John J. Farmer*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Peter M. Ullman*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

This appeal involves a regulation of the Public Employees' Retirement System (PERS), namely *N.J.A.C.* 17:2–3.13. PERS sought to clarify that certain beneficiaries of a deceased employee must elect to receive a retirement allowance or to collect a full insurance benefit, but not both. Appellant, the New Jersey Education Association (NJEA), contends the regulation conflicts with the statute it purports to implement and is therefore invalid. We disagree and affirm.

**I**

Before addressing whether the regulation is consistent with the underlying statutes, some background is required. The Public Employees' Retirement System provides benefits to a broad category of public employees. Among these benefits are a death benefit and a retirement allowance. The death benefit is generally one-and-one-half times the final salary for a PERS member who dies prior to retirement, but is reduced to $\frac{3}{16}$ of the final salary for a member who dies after retirement. The retirement allowance is a periodic payment that continues through the remainder of a

retiree's life or the life of the retiree's beneficiary. PERS members who have active status at the time of their death receive no retirement allowance, although the beneficiary receives a return of the member's contributions to the system.

Prior to 1984, in order for a member (or the member's beneficiary) to receive a retirement allowance, the member had to survive the effective date of his or her retirement by at least thirty days. *See N.J.S.A.* 43:15A–50. At the same time, the life insurance death benefit would be reduced from one-and-one-half times the final salary to ³⁄₁₆ of the final salary on the thirty-first day following the member's retirement unless the member "converted" the group life insurance coverage to an individual policy. *See N.J.S.A.* 43:15A–93. Thus, the two statutes effectively allowed an employee or the employee's beneficiary to receive either the higher death benefit and no retirement allowance or the smaller death benefit and the retirement allowance.

Amendments to *N.J.S.A.* 43:15A–50 in 1984 and in 1995 eliminated the thirty-day survival requirement, so that the retirement allowance could, upon the beneficiary's request, become effective even though the member did not survive the effective retirement date by thirty days. As amended, *N.J.S.A.* 43:15A–50 provides in part:

> Except in the case of members who have elected to receive (1) a deferred retirement allowance pursuant to section 38 (C. 43:15A–38) or (2) early retirement allowances pursuant to subsection b. of section 41 (C. 43:15A–41) after separation from service pursuant to section 38, if a member dies within 30 days after the date of retirement or the date of board approval, whichever is later, his retirement allowance shall not become effective and he shall be considered an active member at the time of death. However, if the member dies after the date the application for retirement was filed with the system, the retirement will become effective if:
>
> c. The deceased member had designated a beneficiary under an optional settlement provided by this section; and
>
> d. The surviving beneficiary requests in writing that the board make such a selection. Upon formal action by the board approving that request, the request shall be irrevocable.
>
> The board may select an Option 3 settlement, on behalf of the beneficiary of a member who applied for and was eligible for retirement but who died prior to the

effective date of the retirement allowance, if all of the above conditions, with the exception of c., are met.

The gist of this statute is that if a member does not live at least thirty days past the effective retirement date or approval date, whichever is later, the member is treated as if he or she were an active member at the time of death, thereby denying the beneficiary a retirement allowance. However, subsection d grants relief from this general rule if the beneficiary files a written request for the retirement allowance.

*N.J.S.A.* 43:15A–93 continues to describe options for life insurance when a member retires or leaves employment:

Any such group policy or policies shall include, with respect to any insurance terminating or reducing because the member ceases to be eligible for participation under the Public Employees' Retirement System or because the member has ceased to be in service or has retired, the conversion privilege available upon termination of employment as prescribed by the law relating to group life insurance; and shall also include, with respect to insurance terminating because of termination of the group policy resulting from a termination of the death benefits for all members established under sections 38, 41, 45, 46, 48, 49 and 57 of P.L.1954, c. 84 (C. 43:15A–38, 43:15A–41, 43:15A–45, 43:15A–46, 43:15A–48, 43:15A–49, 43:15A–57), the conversion privilege available upon termination of the group policy as prescribed by the law relation to group life insurance. Any such group policy or policies shall also provide that *if a member dies during the 31–day period during which he would be entitled to exercise the conversion privilege, the amount of insurance with respect to which he could have exercised the conversion privilege shall be paid as a claim under the group policy.*

[ (emphasis added).]

Thus, if a member dies during the thirty-one day period, the beneficiary may still receive the full death benefit. This statute was not amended at the time *N.J.S.A.* 43:15A–50 was amended.

Read literally, *N.J.S.A.* 43:15A–50 and *N.J.S.A.* 43:15A–93 seem to permit a beneficiary of a member who filed his or her application for retirement allowance, but died during the thirty-one day period when the higher death benefit was payable, to receive both the retirement allowance and the active member's higher life insurance benefit. PERS concluded that while the amendments to *N.J.S.A.* 43:15A–50 provided beneficiaries with the flexibility to receive the retirement allowance, it was the Legislature's intention

to continue the practice of allowing only one benefit, rather than both the higher insurance benefit and the retirement allowance.

PERS proposed a new rule to eliminate the ambiguity. The proposed rule, *N.J.A.C.* 17:2–3.13, contained the following pertinent language:

> For the purposes of P.L.1984, c. 96, section 1, as amended by P.L.1995, c. 221, section 2, (*N.J.S.A.* 43:15A–50), the person designated as the beneficiary of an optional settlement on the retirement application may request that a retirement become effective and that a selection of an optional settlement be made as authorized by the law. If there is no designated beneficiary for an optional settlement, the person designated as the beneficiary to receive the return of contributions or unpaid benefits due to a retiree at the date of death may make this request. If a beneficiary requests that an optional settlement be made, the death benefits payable on behalf of the member shall be the death benefits payable on behalf of a member who dies after retirement as otherwise provided in the Public Employees' Retirement System Act, *N.J.S.A.* 43:15A–1 through 141 as amended and supplemented.

NJEA objected to the proposed rule, claiming it was contrary to the statutory requirements. Nevertheless, PERS adopted *N.J.A.C.* 17:2–3.13 in the proposed form on July 15, 1998.

## II

Before we turn to NJEA's contention, we note some well-established principles regarding regulations adopted by administrative agencies. Those regulations are accorded a presumption of validity. *New Jersey League of Municipalities v. Department of Community Affairs,* 158 *N.J.* 211, 222, 729 *A.*2d 21 (1999). The burden of proof is on the challenger to overcome these presumptions. *Ibid.* This judicial deference is based largely on the recognition that administrative agencies have specialized expertise necessary to enact regulations dealing with the subject matter of that agency. *Ibid.* A regulation "may be set aside only if it is proved to be arbitrary or capricious or if it plainly transgresses the statute it purports to effectuate, or if it alters the terms of the statute or frustrates the policy embodied in it." *In re Adoption of Amendments to N.J.A.C. 6:28–2.10, 3.6 and 4.3,* 305 *N.J.Super.* 389, 401–02, 702 *A.*2d 838 (App.Div.1997).

NJEA contends that *N.J.S.A.* 43:15A–93 is clear and unambiguous. Specifically, NJEA urges that this statute clearly provides that if a member dies within the thirty-one day period during which he or she would be entitled to exercise the conversion privilege, the beneficiary is entitled to the full life insurance benefit. Similarly, NJEA urges that *N.J.S.A.* 43:15A–50 is clear and does not purport to limit or restrict the member's or beneficiary's entitlement to a retirement allowance. Consequently, NJEA contends the regulation is invalid because it deprives beneficiaries of their right to receive both statutory benefits given to them by the Legislature.

PERS recognizes that facially the two statutes do not clearly articulate what the regulation clarifies. However, PERS points out that the legislative history demonstrates that in amending *N.J.S.A.* 43:15A–50, the Legislature intended the beneficiary to select either a retirement allowance or an active member death benefit, but not both.

To be sure, a fundamental obligation in construing a statute is to effectuate the intent of the Legislature and to make sense of the relevant statute. *Strasenburgh v. Straubmuller,* 146 *N.J.* 527, 539, 683 *A.*2d 818 (1996). When interpreting a statute, we must first look at the plain words of the statute. *Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 202, 723 *A.*2d 944 (1999). Certainly where the language is clear, courts will enforce the statute as written. *Ibid.* However, a statute's meaning is not self-evident if varying interpretations of the statute are plausible. *Ibid.* In many cases, the legislative history underlying the statute may aid in discovering the intent of the Legislature. *Stafford v. Stafford Township Zoning Bd. of Adjustment,* 154 *N.J.* 62, 69, 711 *A.*2d 282 (1998). "Sources of legislative intent are the language of [the] statute, the policy behind [the] statute, concepts of reasonableness, and legislative history." *Parker v. Esposito,* 291 *N.J.Super.* 560, 566, 677 *A.*2d 1159 (App.Div.), *certif. denied,* 146 *N.J.* 566, 683 *A.*2d 1162 (1996).

Just as important, when a statute's plain language would lead to a result contrary to the intent of the Legislature, courts are not confined to a literal reading of that language. *In re Return of Weapons to J.W.D.*, 149 *N.J.* 108, 115, 693 *A.*2d 92 (1997). Thus, the entire legislative scheme of which this statute is a part should be considered in determining the legislative intent. *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 129, 527 *A.*2d 1368 (1987). To that end, we are required to read statutes sensibly rather than literally. *Roig v. Kelsey*, 135 *N.J.* 500, 515, 641 *A.*2d 248 (1994).

Here, the Senate Budget and Appropriations Committee's May 15, 1995 Statement to A-1248, the bill that was ultimately enacted as Chapter 221 (*N.J.S.A.* 43:15A-50), provides in part:

Senate Bill No. 1309, as amended, eliminates the 30-day waiting period and certain other conditions required before retirement becomes effective for a member of the Public Employees' Retirement System (PERS) or the Teachers' Pension and Annuity Fund (TPAF).

Under current law, if a member who has filed an application for retirement under PERS or TPAF dies within 30 days after the date of retirement or the date of board approval, whichever is later, the retirement allowance will not become effective and the member is considered an active member at the time of death.

However, if a member dies 30 days or more after the date the application for retirement is filed, retirement will become effective if the application for retirement was received by the system prior to the date of death, if the deceased member had terminated covered public employment at least one day prior to the effective date of retirement and had designated a beneficiary under an optional settlement provided, and if the surviving beneficiary makes the appropriate written request.

*This bill grants survivorship benefits to a deceased member's beneficiary under an optional settlement if the member's application for retirement was filed with the system prior to the date of death without the currently required passage of 30 days or more between the filing of the retirement application and the date of the member's death, without the requirement that the deceased member terminate covered public employment at least one day prior to the effective date of retirement and without the requirement that the system receive the application prior to the date of death.*

\* \* \*

*FISCAL IMPACT*

In a fiscal estimate prepared by the Office of Legislative Services on an identical bill (Assembly Bill No. 1248 of 1994) prior to its amendment by this committee,

OLS notes that, if a member dies while in service (other than as the result of an accident), the beneficiary is entitled to a life insurance death benefit. In PERS and TPAF the member is automatically covered by a non-contributory death benefit of 1½ times the member's final salary. In addition, a member can elect contributory coverage which provides PERS members with a total of 3 times final salary and TPAF members with a total of 3½ times final salary.

Death benefit coverage for retired members of PERS and TPAF is only available to members over the age of 60. PERS retirees receive $\frac{9}{16}$ times final salary while members of TPAF receive $\frac{9}{16}$ times final salary for non-contributory coverage and $\frac{9}{16}$ times final salary for contributory coverage.

Consequently, *it is not clear what the impact of this legislation will be because for some individuals the life insurance death benefit is more attractive or valuable than a survivor's benefit and there is no information available to indicate the number of individuals who might be affected by this legislation.*

The OLS further notes that a member's selection (to retire or not) will be determined by each individual's unique circumstances. If the surviving beneficiary is young, a survivorship allowance (pension) for a beneficiary under an optional settlement is two or three times more valuable, in present value terms, than the contributory life insurance death benefit and the return of contributions with interest. If the beneficiary is older, then the contributory life insurance benefit and the return of the member's contributions with interest would provide a larger benefit than the present value of the beneficiary's survivorship allowance.

[ (emphasis added).]

In addition, the Legislative Fiscal Estimate prepared by OLS on July 22, 1994, provides in part:

The OLS further notes that if the retroactive portion of this bill is to provide a retirement benefit to a beneficiary who has already received the death-in-service life insurance death benefit (either contributory or non-contributory depending on the member's selection) and the return of the member's contributions plus interest, the *beneficiary will have to return the member's contributions plus interest and most (all but $\frac{9}{16}$ or 7/16) of the life insurance death benefit to the Division of Pensions and Benefits because under this legislation, the member would be considered retired and the beneficiary would now be entitled to the retired life insurance death benefit applicable and a survivor's pension assuming the member chose one of the options available at the time of retirement.*

[ (emphasis added).]

We conclude this legislative history supports the view that the amendment of *N.J.S.A.* 43:15A–50 intended to continue the practice of allowing certain beneficiaries to choose either an active member insurance death benefit or a retirement allowance. In particular, in discussing the retroactive portion of the bill, the OLS noted that if a beneficiary had previously received the death-in-service life insurance death benefit but now wanted the retirement

benefit, the beneficiary would have to return to PERS a substantial portion of the life insurance death benefit. Surely, there would be no need to consider the return of the life insurance death benefit if the beneficiary was to be given both the death benefit and the retirement benefit.

Consequently, we do not accept NJEA's literal interpretation of the relevant statutes. Such an interpretation would give benefits to a limited class of beneficiaries which exceed the benefits that a retiring member could receive, absent an election to purchase additional insurance.

█ Simply put, reading the two statutes together, in light of the legislative history, we are satisfied that PERS's interpretation of the statutes as embodied in *N.J.A.C.* 17:2–3.13 is the correct one. Giving due regard to the presumption of validity of the regulations promulgated by an agency such as PERS, we conclude that *N.J.A.C.* 17:2–3.13 is valid.

Affirmed.