NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4327-17T4

IN RE ADOPTION OF N.J.A.C.
17:2-3.8 AND 17:2-3.13.
_____

APPROVED FOR PUBLICATION

February 21, 2019

APPELLATE DIVISION

Argued January 7, 2019 – Decided February 21, 2019

Before Judges Messano, Fasciale and Gooden Brown.

On appeal from the New Jersey Department of the
Treasury, Division of Pensions and Benefits.

Richard A. Friedman argued the cause for appellant
New Jersey Education Association (Zazzali, Fagella,
Nowak, Kleinbaum & Friedman, attorneys; Richard A.
Friedman, of counsel and on the brief; Kaitlyn E.
Dunphy, on the briefs).

Amy Chung, Deputy Attorney General, argued the
cause for respondent Board of Trustees, Public
Employees' Retirement System (Gurbir S. Grewal,
Attorney General, attorney; Melissa H. Raksa,
Assistant Attorney General, of counsel; Amy Chung,
on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

This appeal focuses on two amended regulations (the two regulations)

promulgated by the Board of Trustees (the Board), Public Employees'

Retirement System (PERS): N.J.A.C. 17:2-3.8(b) (implementing N.J.S.A. 43:15A-93 by clarifying the effective date for converted individual insurance policies); and N.J.A.C. 17:2-3.13 (implementing N.J.S.A. 43:15A-50 by addressing benefits payable when a member dies with a retirement application pending). The category of PERS members primarily affected by this appeal are those who exercised a "conversion privilege," died while their retirement applications were pending, and whose beneficiaries chose "retired" benefits, not "active" benefits. The New Jersey Education Association (NJEA) argues that the two regulations conflict with the enabling statutes they purport to implement, and that the Board therefore exceeded its statutory authority and acted arbitrarily.[1]

The two regulations maintain the longstanding practice that beneficiaries of PERS members may generally receive a "retired" benefit (from the member's retirement allowance) or an "active" benefit (from the member's life

_____

[1]  The Department of the Treasury, Division of Pension and Benefits (Division), administers New Jersey's public retirement systems, including PERS. In general, the Division's regulations govern the administration of the State retirement systems. N.J.A.C. 17:1. The Division also promulgates PERS regulations under N.J.A.C. 17:2. Although the Division administers PERS, it is the Board that has "general responsibility for the proper operation of [PERS]" and must "annually establish rules and regulations for the administration and transaction of the [B]oard's and committees' business." N.J.S.A. 43:15A-17(a)(1). Therefore, NJEA's appeal is from the Board's amendments to the two regulations.

insurance), but not both. For years, PERS members have had the right to convert a group insurance policy to an individual policy. This "conversion privilege" allows members who terminate employment to maintain adequate life insurance.

This appeal requires us to decide two underlying issues. First, may a beneficiary make a claim against the converted individual insurance policy when the member merely applied for that insurance protection and submitted a premium check to protect the "conversion privilege," died while a retirement application was pending, and whose beneficiary opted for a statutory "retired" benefit? Second, under the enabling statutes, is that beneficiary entitled to receive both the member's life insurance and retirement allowance simultaneously? The answers to these questions inform our conclusion that the two regulations are valid.

As to the first question, the answer is no. If a PERS member whose retirement application is pending and whose beneficiary has chosen the "retired" benefit exercises the "conversion privilege," and then dies during the statutory thirty-one-day grace period applicable to the group insurance policy, the beneficiary's life insurance claim is against the member's group policy. That is so because the converted individual insurance policy will not become effective until after expiration of the grace period for the group policy. By

3

statute, "the amount of life insurance which [a beneficiary] would have been entitled to . . . under the individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor had been made" during the grace period. N.J.S.A. 17B:27-72(k).

The answer to the second question is also no. Generally, a beneficiary cannot receive the member's retirement allowance in addition to the death benefit, which of course has been the law for years. But payment on a life insurance claim for a member on "active" status, in accordance with longstanding precedent, entitles the beneficiary to reimbursement of the member's pension contributions plus interest on those contributions.

Applying the presumption of validity and reasonableness ordinarily accorded to administrative regulations, and giving the Board wide latitude to achieve its legislatively assigned tasks, we hold that the two regulations – both effective in January 2018 – comport with the overall framework, objectives, and terms of the enabling statutes and established precedent. Any other result would require that we re-write the legislative framework of the enabling statutes and ignore precedent, which we will not do. We therefore decline to invalidate the two regulations, and affirm.

I.

A familiar standard of review guides our analysis. "Administrative regulations are entitled to a presumption of validity and reasonableness." In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 395 (App. Div. 2018). The burden of overcoming that presumption is on the party challenging the agency action. Ibid. Here, NJEA has the burden.

Overturning an administrative determination occurs only if it was "arbitrary, capricious, unreasonable or violated express or implied legislative policies." Ibid. "Administrative agencies have wide discretion to decide how best to approach legislatively assigned administrative tasks." Ibid. We liberally construe "the grant of authority to an administrative agency . . . to enable the agency to accomplish its statutory responsibilities." Ibid. Consequently, we "readily imply such incidental powers as are necessary to effectuate fully the legislative intent." Ibid. Administrative regulations must nevertheless be "within the fair contemplation of the delegation of the enabling statute." Ibid. The substantial deference we ordinarily apply to an agency regulation is available if it is "consistent with the governing statutes' terms and objectives." Ibid.

In determining whether an agency possessed the requisite authority to issue a regulation, courts strive "to determine the intent of the Legislature."

5

Id. at 396. To that end, we begin with the statutory language, which is the best indicator of legislative intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). Although we will analyze the text of two enabling statutes (N.J.S.A. 43:15A-93 and N.J.S.A. 43:15A-50), we perform that analysis by considering the entire enabling legislation. Ibid. That is, we look beyond the specific terms of the enabling act to the statutory policy by examining the entire legislation in light of its surroundings and objectives. Ibid. We defer to the interpretation of legislation by the administrative agency to whom its enforcement is entrusted, but only if that interpretation "is not plainly unreasonable." Matturri v. Bd. of Trs. of the Judicial Ret. Sys., 173 N.J. 368, 382 (2002).

II.

With those standards in mind, we begin by summarizing the pertinent legal principles. Our summary focuses on two distinct benefits: (1) a lump sum payment to a beneficiary upon death of a member; and (2) a retirement allowance to a member or that member's beneficiary. Our summary bolsters the conclusion that a converted life insurance policy becomes effective when the group policy expires at the end of the thirty-one-day grace period. And the summary applies well-grounded precedent that beneficiaries of PERS members may receive a "retired" benefit or an "active" benefit, but not both, regardless of the effective date for a converted individual insurance policy.

As to the first benefit, PERS members are entitled to life insurance while actively employed. We commonly call this a death benefit. Beneficiaries of PERS members generally receive life insurance benefits under a member's group life insurance policy (the group life policy) issued by the Prudential Insurance Company (Prudential), which provides a lump sum payment in the event of death. N.J.S.A. 43:15A-41(c); N.J.S.A. 43:15A-88. The group life policy remains in effect for thirty-one days after a member's employment ceases. Indeed, the group life policy must "contain a provision that the policyholder is entitled to a grace period of [thirty-one] days." N.J.S.A. 17B:27-72(b). Before retirement, the death benefit is generally one-and-one-half times the final salary of the PERS member. N.J.S.A. 43:15A-41(c). Thereafter, the amount of the death benefit decreases.[2]

---

[2] The decrease is authorized pursuant to N.J.S.A. 43:15A-48(c) – entitled "Retirement allowance for service" – which states:

> Upon the receipt of proper proofs of the death of a member who has retired on a service retirement allowance, there shall be paid to the member's beneficiary, an amount equal to 3/16 of the compensation upon which contributions by the member to the annuity savings fund were based in the last year of creditable service.

The decrease is dependent on satisfying the terms of this statute.

Recognizing that the amount of the death benefit will decrease, the Legislature passed a law that allowed members to maintain adequate life insurance. Under N.J.S.A. 43:15A-93, members receive a "conversion privilege," which allows them to convert their group life policy to an individual insurance policy (the individual policy). If a member wishes to exercise this conversion privilege, the member must do so during the thirty-one day grace period.

Therefore, exercising the conversion right allows for adequate life insurance at the end of the grace period. N.J.S.A. 43:15A-93 provides in pertinent part:

> Any such group policy or policies shall include, with respect to any insurance terminating or reducing because the member ceases to be eligible for participation under the [PERS] or because the member has ceased to be in service or has retired, the conversion privilege available upon termination of employment as prescribed by the law relating to group life insurance; and shall also include, with respect to insurance terminating because of termination of the group policy resulting from a termination of the death benefits for all members established under . . . [N.J.S.A.] 43:15A-38, 43:15A-41, 43:15A-45, 43:15A-46, 43:15A-48, 43:15A-49, 43:15A-57, the conversion privilege available upon termination of the group policy as prescribed by the law relating to group life insurance. Any such group policy or policies shall also provide that <u>if a member dies during the [thirty-one]-day period during which he would be entitled to exercise the conversion privilege, the amount of insurance with respect to which he could have</u>

> exercised the conversion privilege shall be paid as a claim under the group policy. When benefits payable upon the death of a member following retirement are determined as though the member had not retired, the death benefits payable under the group policy, together with the amount of insurance paid under any individual policy obtained under the conversion privilege, shall in no event exceed the amount of insurance for which the member was insured under the group policy immediately prior to the date the right of conversion arose.
>
> [(Emphasis added).]

N.J.S.A. 43:15A-93 explicitly addresses two categories of PERS members who cease employment. First, those individuals who do not exercise the "conversion privilege" and who die during the thirty-one-day grace period. For this first category, "the amount of insurance . . . shall be paid as a claim under the group policy." Ibid. And second, those who exercise a "conversion privilege" and die while their retirement application is pending and whose beneficiaries choose "active" benefits. For this second category, the amount of death benefits payable "shall in no event exceed the amount of insurance for which the member was insured under the group policy immediately prior to the date the right of conversion arose." Ibid. A PERS member in "active" status at the time of death receives no monthly retirement allowance, although the beneficiary receives a return of the member's pension contributions plus interest on those contributions.

9                                                                    A-4327-17T4

N.J.S.A. 43:15A-93 does not explicitly address a third category of beneficiaries primarily affected by this opinion, that is, those beneficiaries who chose "retired" benefits – when the member had exercised a "conversion privilege" and died while the member's retirement application was pending. To clarify the effective date of the individual policy converted from a group insurance policy, the Board amended N.J.A.C. 17:2-3.8(b), which now provides:

> If a member is covered by group life insurance during employment, the coverage shall cease [thirty-one] days subsequent to the member's termination date from employment, regardless of the cause of termination. A member may convert the life insurance at the member's expense as set forth in N.J.S.A. 43:15A-93. The converted individual policy will not take effect until the expiration of the group life insurance policy at the conclusion of the [thirty-one]-day grace period.
>
> [(Emphasis added).]

The effective date for the individual policy for this third category of beneficiaries, however, is the same as the other two categories of beneficiaries explicitly addressed by N.J.S.A. 43:15A-93. N.J.S.A. 17B:27-72(k) provides the statutory support for that conclusion, which states in pertinent part that

> [t]he [group] policy shall contain a provision that, if a person insured under the group policy, . . . dies during the period within which the individual would have been entitled to have an individual policy issued . . . and before the individual policy shall have become

effective, <u>the amount of life insurance</u> which he would have been entitled to have issued under the individual policy <u>shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor had been made</u>.

[(Emphasis added).]

As to the second benefit, which is a retirement allowance, retired PERS members are entitled to receive a periodic allowance, or what is commonly called a pension. Under this benefit, the enabling statute (N.J.S.A. 43:15A-50) governs multiple options available to PERS members. N.J.S.A. 43:15A-50, which does not include a "conversion privilege" for PERS members, provides:

> At the time of retirement, a member shall receive benefits in a retirement allowance payable throughout life, or the member may, on retirement, elect to receive the actuarial equivalent of the member's retirement allowance, in a lesser retirement allowance payable throughout life, with the provision that:
>
> Option 1. If the member dies before the member has received in payments the present value of the retirement allowance as it was at the time of retirement, the balance shall be paid to a legal representative or to such person as the member shall nominate by written designation acknowledged and filed with the retirement system, either in a lump sum or by equal payments over a period of years at the option of the payee. If the member shall have designated a natural person as the payee, said payee may elect to receive such payments in the form of a life annuity.

11

Option 2.   Upon the member's death, the member's retirement allowance shall be continued throughout the life of and paid to such person[,] as the member shall nominate by written designation duly acknowledged and filed with the retirement system at the time of retirement.

Option 3.   Upon the member's death, one-half of the member's retirement allowance shall be continued throughout the life of and paid to such person[,] as the member shall nominate by written designation duly acknowledged and filed with the retirement system at the time of retirement.

Option 4.   Some other benefit or benefits shall be paid either to the member or to whomever the member nominates, if such other benefit or benefits, together with the lesser retirement allowance, shall be certified by the actuary to be of equivalent actuarial value.   In no case, however, shall the lesser retirement allowance be smaller than that provided under Option 2.

Option 5.   Some other benefit, which is equivalent to the full amount, three-quarters, one-half or one-quarter of the member's retirement allowance, shall be paid to whomever the member nominates and if that nominee dies before the member, the member's retirement allowance shall increase to the maximum retirement allowance for the member's lifetime, provided that such other benefit together with the member's lesser and maximum retirement allowances shall be certified by the actuary to be of equivalent actuarial value.

If the total amount of benefits paid to a retirant who does not elect to receive  benefits in the form of an optional settlement, or to the retirant and the designated beneficiary in the case of a retirant who does so elect, before the death of the retirant or the retirant and the beneficiary is less than the deductions accumulated in the retirant's account at the time of

retirement, including regular interest, the balance shall be paid in one lump sum to the retirant's designated beneficiary or estate in the manner provided . . . [N.J.S.A.] 43:15A-51.

Importantly, N.J.S.A. 43:15A-50 addresses under what circumstances a member's retirement allowance becomes effective if the member dies within thirty days "after the date of retirement or the date of [B]oard approval, whichever is later."

> Except in the case of members who have elected to receive (1) a deferred retirement allowance pursuant to . . . [N.J.S.A.] 43:15A-38 or (2) early retirement allowances pursuant to subsection b. of . . . [N.J.S.A.] 43:15A-41 after separation from service . . . if a member dies within [thirty] days after the date of retirement or the date of [B]oard approval, whichever is later, the member's retirement allowance shall not become effective and the member shall be considered an active member at the time of death. However, if the member dies after the date the application for retirement was filed with the system, the retirement will become effective if:
>
>      . . . .
>
> c. The deceased member had designated a beneficiary under an optional settlement provided by this section; and
>
> d. The surviving beneficiary requests in writing that the [B]oard make such a selection. Upon formal action by the [B]oard approving that request, the request shall be irrevocable.
>
> The [B]oard may select an Option 3 settlement, on behalf of the beneficiary of a member who applied for

and was eligible for retirement but who died prior to the effective date of the retirement allowance, if all of the above conditions, with the exception of c., are met.

[Ibid.]

Subsection (d) is the exception to the general rule of N.J.S.A. 43:15A-50 that the member is treated as an "active" member at death if the member does not live at least thirty days past the effective retirement date or approval date, whichever is later. Under the exception, the beneficiary chooses either "active" or "retired" benefits, but not both.

To eliminate any ambiguity as to the rights enjoyed under N.J.S.A. 43:15A-50 during the thirty-day period, and applying the effect of the overall statutory framework, objectives, and terms – that a beneficiary may obtain either an "active" or "retired" benefit – the Board amended N.J.A.C. 17:2-3.13, entitled "Benefits payable when a member dies with a retirement application pending," which provides:

> Pursuant to N.J.S.A. 43:15A-50 and 43:15A-50.1, the person designated as the beneficiary of an optional settlement on the retirement application may request, upon the member's death, that a retirement become effective and that a selection of an optional settlement be made, as authorized by the law. If there is no designated beneficiary for an optional settlement, the person designated as the beneficiary to receive the return of contributions or unpaid benefits due to a retiree at the date of death may make this request. If a beneficiary requests that an optional settlement be made, the death benefits payable on behalf of the

> member shall be the death benefits payable on behalf of a member who dies after retirement as otherwise provided in the [PERS] Act, N.J.S.A. 43:15A-1 through 141 as amended and supplemented.

In amending the two regulations, the Board explained that the statutory scheme and legal precedent support the notion that "when a member dies with a retirement application pending, the member's beneficiary (or beneficiaries) is entitled to receive active group life insurance benefits or retired pension benefits, but not both." 49 N.J.R. 2189(a) (July 17, 2017).

### III.

On appeal, NJEA argues that we should invalidate the two regulations as ultra vires. NJEA conflates two general contentions. First, according to NJEA, when a member has exercised a "conversion privilege" and has died during the grace period, that member's beneficiary – who has chosen a "retired" benefit – gets both pension and life insurance benefits. NJEA relies on New Jersey Education Association v. Board of Trustees, Public Employees' Retirement System, 327 N.J. Super. 405 (App. Div. 2000) (NJEA v. PERS) and N.J.S.A. 43:15A-50 for that proposition. Second, NJEA contends – as to the death benefit for such a beneficiary – that the life insurance claim is under the individual policy, not the group policy. NJEA says that is so primarily because the member "elected to and purchased an individual life insurance policy [by submitting the first premium check]."

15

## A.

Setting aside for the moment NJEA's first contention that such a beneficiary is entitled to receive life insurance and pension benefits simultaneously, its argument that the beneficiary can make a claim against the individual policy begs the question of when the individual policy becomes effective. NJEA initially maintained in its merits brief that once a member applies for an individual policy – by exercising the conversion privilege – and makes a premium payment, the individual policy becomes effective. But NJEA then contended in its reply brief that the effective date of the converted policy is "a red herring" and "irrelevant." And for good reason.

The statutory scheme contemplates beneficiaries (who sought "retired" benefits) filing claims against the group policy for members who die within thirty-one days during which those members may exercise a "conversion privilege." According to the plain text of N.J.S.A. 17B:27-72(k), "the amount of life insurance which [a beneficiary] would have been entitled to . . . under the individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor had been made." We cannot alter this text. Only the Legislature can do that. Of course, a member is free to obtain additional life insurance – beyond the coverage available during the grace period before the

effective date of the individual insurance policy – if that member wishes to do so.

The Board's action in promulgating the two regulations comports with the enabling statutes' terms and objectives. The October 2014 version of the Division's Conversion of Group Life Insurance Fact Sheet #13 explicitly stated that "[t]he individual policy will be effective at the end of the [thirty-one] day conversion grace period." The July 2016 version of Fact Sheet #13 states that the individual policy becomes effective at the end of the "[thirty-one] day conversion grace period." It states further that "[i]f you do not convert to an individual policy by the end of the [thirty-one] day period, or if you have applied for an individual policy and your death occurs within this [thirty-one] day period, group coverage will end and the policy will not be eligible for conversion." And the April 2018 version of Fact Sheet #13 continues the practice of members protecting their "conversion privilege" by applying for conversion to Prudential, with at least one month's premium, when that member files for retirement. It additionally states, "[w]hile sending the application and premium to Prudential will protect your conversion privilege, under no circumstances can the conversion policy become effective until [thirty-one] days after you cease employment."

Although not determinative, N.J.A.C. 17:2-3.8(b) comports with Prudential's brochure, which states that a member's "conversion policy will be effective on the [thirty-second] calendar day after your group life insurance coverage ended," and "[i]f you die within [thirty-one] calendar days [during which you are] entitled to conversion, then a life insurance claim will be processed under the group contract." 50 N.J.R. 646(a) (Jan. 16, 2018). Along those lines, the Board remarked that conversion policies "do not become effective until the member's active group life insurance policy expires, since the purpose of a group life insurance conversion privilege is to allow someone who is terminating employment for any reason to continue to have the same level of insurance coverage as while actively employed." Ibid. The Board explained that

> a member's active group life insurance continues for [thirty-one] days after the date of termination of employment for any reason . . . . Because the member is still covered by his or her active group life insurance policy during this [thirty-one]-day period, the member cannot also be covered by a retired and/or converted group life insurance policy.
>
> [Ibid.]

There is ample legal support for these assertions.

B.

That leaves NJEA's remaining argument, that a beneficiary who has chosen a "retired" benefit is simultaneously entitled to that benefit (a pension) and an "active" benefit (or death benefit) when the member exercised a "conversion privilege" and died during the grace period. For this contention, NJEA relies on NJEA v. PERS and N.J.S.A. 43:15A-50, neither of which lead to that conclusion. In NJEA v. PERS, after considering N.J.S.A. 43:15A-50, N.J.S.A. 43:15A-93, and the overall legislative scheme, we did not conclude or suggest that the beneficiary gets the pension benefit and the life insurance benefit.

In NJEA v. PERS, we declined to invalidate N.J.A.C. 17:2-3.13 – effective in 1998 – which clarified that certain beneficiaries of deceased PERS members must elect to receive a retirement allowance or collect a full insurance benefit, but not both. 327 N.J. Super. at 407. We rejected NJEA's argument that the regulation conflicted with N.J.S.A. 43:15A-50 and N.J.S.A. 43:15A-93. Id. at 407-10. In rejecting that contention, and after outlining the statutory framework, and considering the legislative history of N.J.S.A. 43:15A-50, we concluded that N.J.S.A. 43:15A-50 – contrary to NJEA's argument on this appeal – continued the practice of

> allowing certain beneficiaries to choose either an
> active member insurance death benefit or a retirement

allowance. In particular, in discussing the retroactive portion of the bill, the [Office of Legislative Services] noted that if a beneficiary had previously received the death-in-service life insurance death benefit but now wanted the retirement benefit, the beneficiary would have to return to PERS a substantial portion of the life insurance death benefit. Surely, there would be no need to consider the return of the life insurance death benefit if the beneficiary was to be given both the death benefit and the retirement benefit.

Consequently, we do not accept NJEA's literal interpretation of the relevant statutes. Such an interpretation would give benefits to a limited class of beneficiaries which exceed the benefits that a retiring member could receive, absent an election to purchase additional insurance.

[Id. at 413-14 (emphasis added).]

In its merits brief, NJEA states we "suggested" by the phrase "absent an election to purchase additional insurance" that our reference to "additional insurance" means the converted individual policy. If that were the case – NJEA maintains – then a beneficiary would be entitled to both benefits. If we meant to say in that caveat that "additional insurance" was the converted individual policy, then we would have said so. Rather, a retiree who purchases additional insurance would always be entitled to that protection. But we never suggested that a beneficiary can get the active member's insurance death benefit and the retirement allowance simultaneously. Our conclusion at that time – and now – comports with the overall framework, objectives, and terms

20

of the enabling statutes, particularly as reflected by the legislative history of N.J.S.A. 43:15A-50.

We also note that before January 2018 – the effective date for the two regulations – N.J.S.A. 17:2-3.8(b) and N.J.A.C. 7:2-3.13(b) had addressed converted individual policies. In neither of the prior versions of these regulations is there credible support for affording simultaneous "retired" and "active" benefits to beneficiaries. Again, the two regulations specifically addressed the effective date for converted individual insurance policies in accordance with N.J.S.A. 43:15A-93, and benefits payable when a member dies with a retirement application pending in accordance with N.J.S.A. 43:15A-50.

N.J.A.C. 17:2-3.8(b) had previously provided merely that "[i]f a member is covered by group life insurance during employment, the coverage shall cease [thirty-one] days subsequent to the member's termination date from employment, regardless of the cause of termination. A member may convert the life insurance at the member's expense as set forth in N.J.A.C. 7:2-3.13(b)." 49 N.J.R. 2189(a). In other words, the regulation provided the same rights afforded by a plain reading of N.J.S.A. 43:15A-93. The amended regulation simply clarified – as part of the overall legislative scheme and precedent – the effective date for the individual policy.

And N.J.A.C. 7:2-3.13(b) had previously provided:

> Where a beneficiary of a member requests that a retirement take effect and that a selection of an optional settlement be made as authorized under . . . N.J.S.A. 43:15A-50, an additional amount of insurance, not to exceed the amount of insurance that could be converted under the group policies for noncontributory and contributory death benefits, shall be paid as claims under the group policies only if the member files an application for conversion of the insurance upon retirement as provided under N.J.S.A. 43:15A-93 and pays the initial premium for the converted insurance. The premiums paid for the converted insurance shall be retained by the carrier and be applied to the premiums payable by the State and the retirement system for benefits provided under the group policies.
>
> [49 N.J.R. 2189(a).]

The Board amended this regulation because it was "subject to misinterpretation that contradict[ed] the intent of current statutes legislating the administration of beneficiary benefits in cases where a member dies with a retirement application pending." Ibid.

The Board further noted "[e]xisting case law supports that when a member dies with a retirement application pending, the member's beneficiary (or beneficiaries) is entitled to receive active group life insurance benefits or retired pension benefits, but not both." Ibid. In adopting the two regulations, the Board correctly explained – consistent with NJEA v. PERS – that the Legislature's "intent [was] not to allow a member's beneficiaries to

22

[simultaneously] receive both [active death and retired death] benefits." 50 N.J.R. 646(a).

For all of these reasons, we reject NJEA's ultra vires argument. "Ultra vires" acts are acts that are "void and may not be ratified." Port Liberte II Condo. Ass'n v. New Liberty Residential Urban Renewal Co., 435 N.J. Super. 51, 65 (App. Div. 2014) (quoting Grimes v. City of East Orange, 288 N.J. Super. 275, 279 (App. Div. 1996)). "While findings of ultra vires actions are disfavored, '[o]ur role is to enforce the will of the Legislature' because '[s]tatutes cannot be amended by administrative fiat.'" In re Agric., Aquacultural, & Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 223 (App. Div. 2009) (alterations in original) (citations omitted). We are satisfied that the Board's interpretation of N.J.S.A. 43:15A-50 and N.J.S.A. 43:15A-93 is the correct one. Giving the Board's interpretation the presumption of validity, we conclude that N.J.A.C. 17:2-3.8(b) and N.J.A.C. 17:2-3.13 are valid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION